637 A.2d 113

Daniel C. HOLMES

v.

STATE of Maryland.

No. 80, Sept. Term, 1993.

Court of Appeals of Maryland.

Feb. 15, 1994.

Geraldine K. Sweeney, Asst. Public Defender, (Stephen E. Harris, Public Defender, Melissa M. Moore, Asst. Public Defender, on brief), Baltimore, for petitioner.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr. and JOHN F. McAULIFFE, both Judges of the Court of Appeals (Retired) Specially Assigned.

CHARLES E. ORTH, Jr., Judge, retired, Specially Assigned.

I

Daniel C. Holmes was not represented by counsel at his bench trial in the Circuit Court for Baltimore County. He was charged by a criminal information with possession of cocaine, a controlled dangerous substance, with intent to distribute (1st count); possession of a cocaine (2nd count); drug trafficking with a firearm (3rd count); carrying a handgun concealed upon his person (4th count); theft of an automobile (5th count); and unauthorized use of an automobile (6th count). He was convicted of the charges under the 1st, 2d and 6th counts, and found not guilty on the remaining charges. He was duly sentenced and noted an appeal to the Court of Special Appeals. The judgments were affirmed in an unreported opinion filed 19 April 1993. We granted Holmes's petition for a writ of certiorari in which he asked whether the

trial court erred in (1) denying him his right to present closing argument, and (2) in denying his request for a postponement of the trial so he could obtain counsel.

## II

### A

We recount the events which prompted the first question. When the State rested its case, the court asked Holmes if he had "any witnesses that [he wanted] to call?" The transcript of the proceedings reads:

THE DEFENDANT: No, I don't think that—Let me see ... Well, as far as the car theft, there was a lady that I was—

THE COURT: Well, do you have any witnesses?

THE DEFENDANT: No. sir, No. sir.

THE COURT: All right. Now we're at the stage of the hearing where you have to make an election. Do you wish to take the stand and testify or do you wish to remain silent?

THE DEFENDANT: I'd like to say a few things in my behalf.

THE COURT: Well, if you want to refute or to deny what has been said thus far, then you must take the stand in order to do that.

THE DEFENDANT: Okay.

THE COURT: But if you just want to speak on your own behalf and you don't want to take the stand, then you'll still have that opportunity to address the Court.

THE DEFENDANT: No, I don't want to take the stand.

THE COURT: You do not wish to take the stand?

THE DEFENDANT: No.

THE COURT: Very well. Now, if you were to make a motion for judgment of acquittal, I would deny the same. The facts are sufficient to find you guilty.

The judge said to the prosecutor:

Now, I don't know that he can be found guilty of everything that you have in this file.

The judge discussed with the prosecutor which counts were being pursued. The outcome was that there remained the 1st, 2d, and 6th counts; the court granted a motion for judgment of acquittal, which it made on Holmes's behalf, on the remaining counts. The judge informed Holmes:

So you're left with three [charges]: unauthorized use of the vehicle; possession with intent to distribute; and possession.

Then the judge told Holmes: "I've found you guilty of those three charges."

It was at that point that the judge asked Holmes, "What do you want to tell the court?" Holmes responded:

Well, I had no knowledge that the car was stolen. The night that we got the car, the lady that worked for Avis Rent Company give me the keys to the car, because she was at my girlfriend's house that night, to use the car. That's how we had transportation to get to where we were going. I talked to the State's Attorney and I said it's a lady out there and if she is could she verify this lady, Debra Tyler, that works for Avis Rent Company at BWI Airport, and if she could verify that, then I would like to have the lady brought to court to have that charge dismissed also, because she was the lady that come to my house that night and let us use the car, point blank. She wouldn't—she could get her address, but she said that she couldn't come forth and say that she gave us the keys to the car, because she said they let her use the car but she really had no—she really had no ability to use the car, they never give it to her, but she had a friend of hers that worked there and would let her use the car for transportation, you know what I'm saying, and that's the reason why she had the car, to get back and

forth to work, because she lived in Baltimore City and had to drive back and forth to work from Baltimore City to BWI and that's the only transportation she had to go back and forth to work but she let us use this car and I have witnesses to that.

The transcript reads:

THE COURT: All right, well, I'm really not so hung up on that as I am on the other charges. What else do you want to say?

THE DEFENDANT: Well, I had no knowledge that the gun was in the car.

THE COURT: Okay, forget about the gun.

THE DEFENDANT: Okay, and as far as the cocaine was concerned, I did not handle that cocaine.

The judge asked, "Is there anything else you want to tell me in mitigation?" Holmes told the court about his employment and requested a sentence concurrent with a sentence he was already serving. The State urged that a sentence be imposed within the guidelines. The court announced the sentences.

### B

The Court of Special Appeals made short shrift of the issue. It opined that Holmes's remarks

were not in the nature of true closing argument, rather, they more closely resembled allocution.

*Holmes v. State,* slip opinion at 6. Additionally, the intermediate appellate court observed, Holmes "did not object when the court rendered its verdict before he had presented 'closing argument.'" *Id.* at 6–7. It stated:

Thus, the record does not "clearly disclose" either [Holmes's] waiver or denial of the right to present closing argument.

*Id.* at 7. It observed:

When an appellate court is not "certain from the record" whether closing argument was "waived" or "denied," the Court of Appeals has directed that the appropriate course is

to affirm the judgment, "leaving open the defendant's right to seek relief under the Uniform Post Conviction Procedure Act."

*Id.,* quoting *State v. Brown,* 324 Md. 532, 548, 597 A.2d 978 (1991).

## III

### A

■ The State declared before us that

> [t]here is no question that a criminal defendant's Sixth Amendment right to counsel guarantees, in part, an opportunity for counsel to present argument at the close of all the evidence.

The State cited to *Herring v. New York,* 422 U.S. 853, 858–865, 95 S.Ct. 2550, 2553–2557, 45 L.Ed.2d 593 (1975); *Cherry v. State,* 305 Md. 631, 636–647, 506 A.2d 228 (1986); *Spence v. State,* 296 Md. 416, 418–438, 463 A.2d 808 (1983); *Yopps v. State,* 228 Md. 204, 206–208, 178 A.2d 879 (1962). "Moreover," the State added,

> there is no dispute that where, as here, a defendant is not represented by counsel, the defendant possesses a similar right to present closing argument by virtue of the constitutional right of self-representation. *Herring,* 422 U.S. at 864 n. 18 [95 S.Ct. at 2556 n. 18] (citing *Faretta v. California,* 422 U.S. 806, 821–836 [95 S.Ct. 2525, 2534–2542, 45 L.Ed.2d 562] (1975)).

■ It is perfectly clear that Holmes made known to the trial court that, although he did not want to testify, he did desire "to say a few things in [his] behalf." The court gave assurance that Holmes would "have that opportunity to address the court." It is obvious that the court did not afford Holmes that opportunity before rendering its verdicts of guilty. And even a casual scan of the remarks Holmes made to the court shows that he was attempting, to the best of his ability, to argue his case and vent his innocence; his comments were certainly not simply allocution in mitigation of

punishment. The exercise of his right of allocution, as we have seen, came later. We are satisfied that Holmes did all he needed to do to argue his case in timely fashion. Holmes made clear that he desired to speak to his innocence of the crimes charged; the court told him that he would have that opportunity. Under those circumstances, Holmes was not required to make further objection. Because Holmes made a specific request to argue, his failure expressly to object did not constitute a waiver of his right to argue nor did it serve to preclude the preservation of the issue for appellate review. In *Herring v. New York,* 422 U.S. at 858–865, 95 S.Ct. at 2553–2557, the Supreme Court held that the trial court had no discretion to deny a defendant's request to give a closing argument despite the lack of objection following the court's denial, and noted that the right to present closing argument is a fundamental constitutional right which applies in both jury and non-jury cases, applies equally to pro se defendants, and applies even in cases where the evidence appears to be overwhelming.

> Some cases may appear to the trial judge to be simple—open and shut—at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be "likely to leave [a] judge just where it found him." But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.

*Id.* at 863, 95 S.Ct. at 2556, quoting R. Jackson, *The Struggle for Judicial Supremacy* 301 (1941) (footnotes omitted). We said in *Spence v. State,* 296 Md. at 419, 463 A.2d 808:

> It is well-settled in this State that the opportunity for summation by defense counsel prior to verdict in a non-jury trial as well as in a jury trial is a basic constitutional right guaranteed by Article 21 of the Maryland Declaration of Rights and the Sixth Amendment to the United States Constitution as applied to the States by the Fourteenth

Amendment. We recognized the right in *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). In that case the trial judge had entered the verdict at the close of the defendant's case. Defense counsel brought to the court's attention that argument had not been permitted. The trial judge indicated that argument would not change his mind. This Court in reversing the conviction noted that "the same constitutional guaranty applicable to a trial by jury [right of a defendant to have counsel make a proper argument] applies with equal force to a trial before a judge sitting without a jury." *Id.* at 208 [178 A.2d 879].

We do not share the uncertainty of the Court of Special Appeals whether closing argument was waived or denied; it was indeed denied. Therefore, resort to Post Conviction Procedures is not appropriate.

## B

■ The State would have this denial of timely closing argument deemed harmless error. Because of the view the Supreme Court of the United States and this Court have taken of the matter, the suggestion that such denial was harmless is of no merit and does not warrant discussion. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

We hold:

1) the trial court erred in rendering verdicts of guilty before affording Holmes the opportunity to make closing argument;

2) the error was of constitutional dimension;

3) the error was not harmless;

4) Holmes is entitled to a new trial.

In the light of our decision, we do not reach the second question, that is whether the trial court erred in refusing to grant a postponement to enable Holmes to obtain counsel.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;*

**660**

*CASE REMANDED TO THAT COURT WITH DI-
RECTION TO REMAND THE CASE TO THE CIRCUIT
COURT FOR BALTIMORE COUNTY FOR A NEW TRIAL;*

*COSTS IN THIS COURT AND IN THE COURT OF
SPECIAL APPEALS TO BE PAID BY BALTIMORE
COUNTY.*