936 So.2d 415 (2006)
Trevor Vashon CARLISLE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01764-COA.
Court of Appeals of Mississippi.
June 20, 2006.
*417 Leslie D. Roussell, Laurel, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before MYERS, P.J., SOUTHWICK, IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. A Wayne County jury convicted Trevor Carlisle of possession of over one ounce of marihuana with intent to sell, and the Wayne County Circuit Court sentenced him to ten years in the custody of the Mississippi Department of Corrections and ordered him to pay a $10,000 fine. The court also ordered that this sentence be served consecutively with a prior sentence. Aggrieved, Carlisle appeals and alleges the following errors, which list verbatim:
1. THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SUPPRESS THE EVIDENCE INTRODUCED IN THIS CASE AS THERE WAS NO PROBABLE CAUSE TO STOP MR. CARLISLE'S VEHICLE BY LAW ENFORCEMENT, AND HIS DETENTION AND THE SEARCH OF HIS VEHICLE AMOUNTED TO A VIOLATION OF HIS RIGHTS TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE, THEREBY MAKING ALL OF THE EVIDENCE OBTAINED BY LAW ENFORCEMENT IN THIS CASE INADMISSIBLE.
2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING MICHAEL TOLBERT TO TESTIFY TO THE JURY CONCERNING EVIDENCE DISCOVERED BY OTHER OFFICERS. THIS ALLOWED THE INTRODUCTION OF EVIDENCE EVEN THOUGH THERE WAS NO PROPER CHAIN OF CUSTODY ESTABLISHED BY THE STATE AT TRIAL.
3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY LETTING WITNESSES TESTIFY REGARDING PRIOR BAD ACTS OF THE DEFENDANT THEREBY PREJUDICING THE JURY AND VIOLATING HIS RIGHT TO A FAIR TRIAL.
4. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SWEAR IN THE PETIT JURY THAT SAT AS FACT FINDERS IN THIS CASE.
5. THE TRIAL JUDGE'S MOVING VENIRE MEMBERS TO THE END OF THE JURY LIST VIOLATED THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

*418 6. THE TRIAL COURT ERRED IN ORDERING CARLISLE TO SERVE HIS TWO SENTENCES CONSECUTIVELY DUE TO A MISTAKEN BELIEF THAT EXISTING LAW REQUIRED SUCH A SENTENCE.
7. WHETHER THE ABOVE DESCRIBED ERRORS WHEN VIEWED CUMULATIVELY RISE TO THE LEVEL OF REVERSIBLE ERROR.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Officer Michael Tolbert, commander of the South Mississippi Narcotics Task Force, received a phone call from Deputy Kevin Stevens of the Wayne County Sheriff's Department indicating that Stevens had arrested Stephanie Brown for burglary and that she had some information concerning the sale of illegal drugs. In response, Tolbert interviewed Brown at the sheriff's department, and she informed him that she had been purchasing marihuana from a man she knew only as "Trouble." After receiving this information, Tolbert began conferring with other confidential informants and "people on the street" to determine the credibility of the information and to ascertain the identity of "Trouble." Based on his investigation, Tolbert uncovered that "Trouble" could possibly be Trevor Carlisle.
¶ 4. Shortly thereafter, Tolbert contacted Brown and requested that she call "Trouble" to arrange a sale for two ounces of marihuana. Brown placed a phone call to the man she knew as "Trouble" and requested that he meet her at an abandoned bridge in Wayne County. Brown then informed the officers that "Trouble" had agreed to meet her at the arranged location within ten to fifteen minutes and gave them a physical description of the vehicle that "Trouble" would be driving.
¶ 5. Tolbert had officers placed at various locations surrounding the area near the bridge to await "Trouble's" arrival.[1] Mike Mazingo, a Wayne County Sheriff's Department deputy, was hiding in the woods near the abandoned bridge when he notified Tolbert that he had spotted a vehicle matching the description of "Trouble's" car in the area. Tolbert contacted Stevens, who was stationed approximately one-eighth of a mile from the abandoned bridge, and requested that Stevens pull the car over. When Stevens stopped the vehicle, he recognized the driver as Trevor Carlisle. After the stop, other officers converged on the scene.
¶ 6. According to Tolbert's testimony, he arrived at the scene one minute after the car had been stopped by Stevens. Tolbert testified that when he arrived, Marvin Overstreet, an agent with the South Mississippi Narcotics Task Force, was already on the scene and had requested permission to search Carlisle's vehicle. Carlisle declined to allow the officers to search his vehicle. After learning that consent to search had been denied, Tolbert testified that he went to his house, retrieved his canine drug dog, and had the dog begin a search of the outside of Carlisle's vehicle. Tolbert further testified that the dog gave him "an alert at the driver side front and passenger door seam." Based on this alert, the officers began searching the vehicle. The search revealed 193.1 grams of marihuana concealed in various containers throughout the vehicle. As a result, Carlisle was arrested and charged with possession *419 of 193.1 grams of marihuana with intent to sell.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Suppression of the Evidence
¶ 7. Alleging a lack of probable cause, Carlisle moved to suppress the marihuana taken from his vehicle. Carlisle argues that the lack of probable cause makes the stop and subsequent search of his vehicle a "violation of both the Fourth Amendment of the United States Constitution and Section 23 of the Mississippi Constitution."
¶ 8. A suppression hearing was held in which the State put on evidence concerning the basis for the stop and search of Carlisle's vehicle. The State produced the testimony of various officers pertaining to the events and circumstances that led to the stop and search. After hearing the facts of the case, the trial court overruled Carlisle's motion to suppress, stating that:
The law is that these officers had probable cause and reasonable grounds to believe that a felony had been committed and that the defendant was probably guilty of that felony. They certainly had a right to stop the defendant and take him into custody. And if that's the case, they have a right to conduct a search of his person and his vehicle, as I understand the law.
¶ 9. The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution expressly protect a person's right to be secure from unreasonable searches and seizures. Floyd v. City of Crystal Springs, 749 So.2d 110, 114(¶ 14) (Miss.1999). "The prohibition against unreasonable searches and seizures `applies to seizures of the person, including brief investigatory stops such as the stop of a vehicle.'" Id. (citing U.S. v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). "The [Mississippi Supreme Court] has recognized that `given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest,' that is, on less information than is constitutionally required for probable cause to arrest." Id. at (¶ 16) (citing Singletary v. State, 318 So.2d 873, 876 (Miss.1975)).
Such an investigative stop of a suspect may be made so long as an officer has "a reasonable suspicion, grounded in specific and articulable facts, that the person they encounter was involved in or is wanted in connection with a felony" or so long as the officers have "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity."
Id. (citations omitted).
¶ 10. Here, not only do we find that the officers had reasonable suspicion to perform an investigative stop of Carlisle's vehicle, but we also find that they had probable cause to stop and search Carlisle's vehicle. As support for our finding, we reiterate the facts which we find were sufficient to establish probable cause. The officers received information from Brown that she had been purchasing marihuana from an individual she knew as "Trouble." Further investigation by the officers revealed that "Trouble" was likely Carlisle. The officers then requested that Brown make a phone call to "Trouble" to arrange a purchase of marihuana. The sale was arranged for a specific location and at a specific time. Brown informed the officers about the vehicle that "Trouble" would be driving, describing it as a "gray four-door car with a different color driver's side fender and heavily tinted windows." The location, an abandoned bridge, was staked out by officers who *420 noticed a vehicle matching the description of "Trouble's" car approach the area. As Carlisle's vehicle, which matched exactly the description of "Trouble's" car, approached the abandoned bridge, it was stopped by an officer who recognized Carlisle and knew that he was on probation for a prior conviction. At this time, the officers had sufficient probable cause to believe that Carlisle was in possession of marihuana. Therefore, based on the above facts, we find that the officers had probable cause to stop Carlisle, place him under arrest, and initiate a lawful search of his vehicle.
¶ 11. Even though the officers had probable cause when they initially stopped Carlisle's vehicle, the officers further strengthened their case for probable cause by bringing in a certified drug sniffing dog after Carlisle refused to give his consent to the search. Only after the dog gave an alert did the officers initiate a search of Carlisle's vehicle, which revealed 193.1 grams of marihuana.
¶ 12. In short, we find that the officers had the requisite probable cause to enable them to stop and search Carlisle's vehicle. Therefore, we affirm the trial court's denial of Carlisle's motion to suppress the marihuana discovered in his vehicle.

2. Chain of Custody
¶ 13. Under this assignment of error, Carlisle argues that the trial court erred in allowing Officer Tolbert to testify about marihuana that other officers discovered in Carlisle's vehicle. According to Carlisle, in order for admissible evidence to be reliable, a valid chain of custody has to be established. Carlisle argues that in order to establish a valid chain of custody and to prove that evidence has not been tampered with, "the person who found that evidence ought to have to testify as to the location it was found, the circumstances under which it was found, and how it was situated." Carlisle further argues that "to allow another officer to testify as to what other officers found, violates due process, a person's right to confront a witness, as well as evidence rules regarding hearsay."
¶ 14. "The test for chain of custody is to ascertain whether there is any indication of tampering or substitution of evidence." Wells v. State, 604 So.2d 271, 277 (Miss.1992) (citing Gibson v. State, 503 So.2d 230, 234 (Miss.1987)). There is no requirement for the State "to produce every person who handled the object, nor to account for every moment of every day." Butler v. State, 592 So.2d 983, 985 (Miss. 1991). The burden is on Carlisle to prove that tampering or substitution of the evidence took place. Williams v. State, 794 So.2d 181, 185(¶ 10) (Miss.2001) (citing Hemphill v. State, 566 So.2d 207, 208 (Miss.1990)). When reviewing issues regarding chain of custody, we will reverse only if the trial court has abused its discretion in admitting the evidence. Id. at 185(¶ 12).
¶ 15. Here, Carlisle has offered no proof of either a break in the chain of custody or any tampering with the evidence at issue. At trial, Carlisle merely objected to the chain of custody because some of the marihuana was taken out of the bag that it was discovered in. The record reveals that the reason that the marihuana was taken out of the bag was so that it could be submitted to the Mississippi Crime Laboratory for testing. Carlisle's trial counsel never explained or offered any rationale to the trial court about how such a removal of the marihuana amounts to tampering. Moreover, Carlisle's brief fails to point to any evidence or articulate any plausible reason for any possible tampering.
*421 ¶ 16. Furthermore, Tolbert testified that the marihuana discovered by the other officers was uncovered in his presence and immediately turned over to him. Tolbert further testified that all marihuana discovered in Carlisle's vehicle was taken back to the task force office, weighed by him, packaged and sealed by him, and taken to the crime lab by either himself or another agent.
¶ 17. In short, we find that there was sufficient evidence presented for the trial court to find that the chain of custody had been properly maintained. The court did not abuse its discretion in admitting the evidence. This issue is without merit.

3. Testimony Pertaining to Carlisle's Prior Bad Acts
¶ 18. Carlisle argues that the trial court erred in allowing the prosecution to question Brown about her previous drug transactions with him, thereby eliciting improper prior bad acts testimony. Specifically, Carlisle argues that the trial court improperly allowed the prosecution to question Brown about how many times she had previously purchased drugs from him and about how much marihuana her cousin had previously attempted to purchase from him.
¶ 19. We note, as Carlisle admits in his brief, that no objection was made at trial to Brown testifying that she had previously purchased marihuana from Carlisle about twenty times. Therefore, this issue is procedurally barred because it was not properly raised in the trial court. The Mississippi Supreme Court has held that "[a] trial judge will not be found in error on a matter not presented to him for decision." Smith v. State, 729 So.2d 1191, 1205-06(¶ 63) (Miss.1998).
¶ 20. Carlisle did, however, object when Brown testified about the reason that she gave Carlisle for her sudden increase in the amount of marihuana she wanted to purchase. A review of the record reveals that Carlisle's objection in the proceedings below articulates no discernable relation to prior bad acts, which is the basis for this issue on appeal. Instead, Carlisle's objection sounds like a hearsay objection as he objected "to what her [Brown's] cousin said." Our supreme court has held that "[o]bjections to the admissibility of evidence must specifically state the grounds, otherwise, the objection is waived." Oates v. State, 421 So.2d 1025, 1030 (Miss.1982) (citations omitted). Furthermore, "an objection on one or more specific grounds constitutes a waiver on all other grounds." Morgan v. State, 741 So.2d 246, 253(¶ 15) (Miss.1999). Since Carlisle failed to specifically state the grounds for his objection and made what was more akin to a hearsay objection on this point in the proceedings below, he has waived his right to complain of any error on appeal. This issue is procedurally barred.

4. Swearing in the Jury
¶ 21. Carlisle argues that the trial court committed reversible error by failing to administer the petit jury oath to the jury.[2] Carlisle contends that the trial court's failure to swear in the jury resulted in a violation of his fundamental right to a fair trial.
*422 ¶ 22. The State counters that Carlisle failed to make a contemporaneous objection at trial and did not raise the issue in his motion for a new trial. The State also points out that Carlisle failed to make an argument pertaining to the plain error doctrine in his brief to this court.[3] Accordingly, the State maintains that Carlisle's argument is procedurally barred. The State also argues that the trial judge is presumed to have sworn in the jury because the record reveals that the court made several references to an oath administered to the jury.
¶ 23. We agree with the State that Carlisle is procedurally barred from raising this issue on appeal because he failed to make a contemporaneous objection at trial, did not raise this issue in his motion for a new trial, or make an argument to this court under the plain error doctrine. Notwithstanding the procedural bar, we note that this issue is without merit because the Mississippi Supreme Court has held that it is not reversible error where a record does not specifically reflect that a jury was sworn because "the presumption is that the trial judge properly performed his duties." Bell v. State, 360 So.2d 1206, 1215 (Miss.1978).
¶ 24. We find that Carlisle has failed to present sufficient evidence to overcome the presumption that the trial judge administered the oath to the jury. Although the record does not explicitly reflect a reading of the oath, the record does reveal references made by the court to the oath. In instructions that the court gave to the jury, the judge made the following statement: "When you [members of the jury] took your places in the jury box, you made an oath that you would follow and apply these rules of law to the evidence in reaching your verdict in this case." Furthermore, the court's judgment of conviction stated that "a trial before a jury consisting of Edwin Blue and eleven other jurors, having been duly sworn...." From these statements, it can be presumed that the jury was sworn. Furthermore, the record does not clearly contradict these statements indicating that an oath was administered to the jury. Therefore, we find that Carlisle has failed to overcome the rebuttable presumption that the trial judge properly performed his duties. This issue is without merit.

5. Movement of Venire Members to the End of the Jury List
¶ 25. In this assignment of error, Carlisle argues that the trial court erred in moving fourteen potential jurors to the end of the venire list "so the likelihood of them being selected in this trial would be substantially reduced." According to Carlisle, "the actions of the trial judge [were] a radical departure from the jury selection procedures outlined by Mississippi statute and violative of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, article 3, sections 14 and 26 of the Mississippi Constitution, and Mississippi law." In deciding to move the fourteen potential jurors to the end of the venire list, the trial judge stated the following:

*423 So any appellate court can understand what is going on here, we had a trial Monday and Tuesday and 14 jurors served for two days into the night or late hours Tuesday, and I instructed the bailiff  excuse me  the clerk to take those 14 and put them on the end of the list so that the likelihood of them being selected in this trial would be substantially reduced.
¶ 26. The record reveals that Carlisle made no objection to the court's movement of the potential jurors to the end of the venire list during his trial or in his motion for a new trial. We also note that Carlisle made no motion to quash the venire. The Mississippi Supreme Court has held "that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." Page v. Siemens Energy and Automation, Inc., 728 So.2d 1075, 1082(¶ 27) (Miss.1998) (citing Hunter v. State, 684 So.2d 625, 631 (Miss.1996)). Because Carlisle failed to raise any problems or concerns that he may have had with the jury's composition before it was empaneled, we find that he has waived his right to complain about this issue on appeal. Therefore, this issue is procedurally barred.

6. Carlisle's Consecutive Sentences
¶ 27. Under this assignment of error, Carlisle claims that the trial judge erred in ordering him to serve his two sentences consecutively. Carlisle argues that the trial judge had the discretion to order the "sentences to run either concurrently with or consecutive to each other or to any other sentence or sentences previously imposed upon the defendant." Carlisle maintains "that the trial judge was under the mistaken belief that the sentences under law must run consecutively."
¶ 28. The circuit court's sentencing order specifically stated that "[t]his defendant [Carlisle] is a prior convicted felon who has served prison time. This sentence [ten years and a $10,000 fine] is consecutive to the sentence in 01-12G-K." As Carlisle points out in his brief, he was on five years probation for a previous drug-related offense when he was arrested for marihuana possession with intent to sell, resulting in revocation of his probation. Therefore, the court's discretion in sentencing Carlisle was controlled by Mississippi Code Annotated section 99-19-21(2) (Rev.2000), which states:
When a person is sentenced to imprisonment for a felony committed while the person was on parole, probation, earned-released supervision, post-release supervision or suspended sentence, the imprisonment shall commence at the termination of the imprisonment for the preceding conviction. The term of imprisonment for a felony committed during parole, probation, earned-release supervision, post-release supervision or suspended sentence shall not run concurrently with any preceding term of imprisonment. If the person is not imprisoned in a penitentiary for the preceding conviction, he shall be placed immediately in the custody of the Department of Corrections to serve the term of imprisonment for the felony committed while on parole, probation, earned-release supervision, post-release supervision or suspended sentence.
(emphasis added).
¶ 29. Pursuant to section 99-19-21(2), the court was prohibited from allowing Carlisle to serve his new sentence concurrently with his prior sentence. By statute, Carlisle is required to serve the present sentence consecutive to his probation revocation *424 sentence. Therefore, this issue is without merit.

7. Cumulative Error
¶ 30. In his final assignment of error, Carlisle contends that cumulative errors denied him his constitutional right to a fair trial.
¶ 31. At the outset, we note that "the Constitution does not guarantee a perfect trial, but it does entitle a defendant in a criminal case to a fair trial." Hammons v. State, 918 So.2d 62, 65(¶ 10) (Miss. 2005) (citing Clark v. State, 891 So.2d 136, 140-41(¶ 19) (Miss.2004)). Therefore, Carlisle's trial did not have to be perfect in order to be valid. However, the Mississippi Supreme Court has held that "individual errors, not reversible in themselves, may combine with other errors to make up reversible error." Caston v. State, 823 So.2d 473, 509 (¶ 134) (Miss.2002). The Court further noted that:
[t]he question that must be asked in these instances is whether the defendant was deprived of a `fundamentally fair and impartial trial' as a result of the cumulative effect of all errors at trial. If there is `no reversible error in any part, so there is no reversible error to the whole.'
Id. (citations omitted).
¶ 32. After reviewing the issues presented on appeal and the record, we find no reversible error in Carlisle's trial. "Based on the finding of no error by the trial court on each individual issue, there is no cumulative effect for all the alleged errors." Id. at (¶ 135).
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF POSSESSION OF OVER ONE OUNCE OF MARIHUANA (193.1 GRAMS) WITH INTENT TO SELL AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $10,000 IS AFFIRMED. THIS SENTENCE IS CONSECUTIVE TO THE SENTENCE IN 01-12G-K. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
KING, C.J., LEE, AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] More specifically, Wayne County Sheriff's Department Deputies Kevin Stevens, Mike Mazingo, and Stephen Wally and South Mississippi Narcotics Task Force Agent, Marvin Overstreet, were dispersed around the area of the abandoned bridge for containment in the event that "Trouble" tried to flee.
[2] Mississippi Code Annotated section 13-5-71 (Rev.2002) provides that petit jurors be sworn in the following form: "You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence. So help you God."
[3] "[The Mississippi Supreme Court] has held that a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001) (citing Foster v. State, 639 So.2d 1263, 1288-89 (Miss.1994)). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Id. (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). "Further, [we] apply the plain error rule only when it affects a defendant's substantive/fundamental rights." Id. (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991)).