917 A.2d 1162

**Chester HARRIS**

v.

**STATE of Maryland.**

**No. 0536, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 7, 2007.

74

George E. Burns, Jr. (Nancy S. Forster, Public Defender, on brief), for appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel EYLER, JAMES R., SHARER, and WOODWARD, JJ.

Opinion by SHARER, J.

A jury in the Circuit Court for Baltimore City convicted Chester Harris of automobile manslaughter, in violation of Md.Code, Criminal Law Article § 2–209 (2002 and 2003 Supp.), and related offenses.[1]

---

1. The jury convicted Harris of automobile manslaughter, failure to return or remain at the scene of a fatal accident, and failure to stop at the scene of a fatal accident. Because Harris did not have a right to trial by jury as to several of the lesser included offenses, those offenses were heard by the court concurrently with the jury trial. As to those offenses, the court convicted Harris of failure to remain at the scene of an accident involving property damage, reckless driving, and failure to control speed.

Harris was sentenced to ten years in prison for the vehicular manslaughter conviction. He received a consecutive five-year term for failure to return to or remain at the scene of a fatal accident, and a concurrent two month sentence for one of the remaining counts. In addition, the court assessed a total of $1,500 in fines.

Harris raises three issues on appeal, which we have re-phrased as follows:

1. Whether the trial court properly accepted the jury's verdict where the record does not show that the jury was sworn.

2. Whether the trial court abused its discretion in restricting counsel's closing argument.

3. Whether the trial discretion in admitting evidence.

Finding neither error nor abuse of discretion, we shall affirm.

## BACKGROUND

Harris does not contest the sufficiency of the evidence. Because we assume the parties' familiarity with the record and course of proceedings, we therefore need only recite those facts and proceedings that serve to provide a context for the discussion of the issues before us. *See Martin v. State,* 165 Md.App. 189, 193, 885 A.2d 339 (2005), *cert. denied,* 391 Md. 115, 892 A.2d 478 (2006).

This case arises from the death of Michael Edwards on November 22, 2003. The State charged that Mr. Edwards was struck and killed by an automobile driven by Harris. Following a trial on October 28 and 29, 2004, the jury and the court rendered guilty verdicts as we have noted, and sentences were imposed at that time. By counsel, Harris filed a motion for a new trial, which was denied after a hearing on February 23, 2005. This timely appeal followed.

We shall recite additional facts as they relate to the issues raised on appeal.

### 1. Whether the trial court properly accepted the jury's verdict where the record does not show that the jury was sworn.

Harris first maintains that the trial court "erred in not swearing the jury." The State responds, first, that this issue has not been preserved because defense counsel failed to

request that the trial judge administer the oath. The State, assuming that this question is before us, posits in the alternative that Harris has failed to overcome the presumption that the trial judge properly performed his duty to swear the jury. Finally, the State argues that any demonstrated error is harmless beyond a reasonable doubt.

## The Proceedings

Following jury selection, the trial court inquired of counsel about pending pretrial motions. Anticipating that a suppression motion would be heard, the court stated its intent to excuse the jurors until later in the day, after conclusion of the motion hearing. The transcript reflects the following exchange at the bench:

THE COURT: I will let this Jury go.

THE CLERK: Do you want me to swear them in first?

THE COURT: Yes, I'll have you swear them

first. I'll pick the forelady or Foreman first, too. I'm trying to figure out how long to excuse them for. No more than 2 o'clock. Maybe 1:30. Think we can do this [motion] in a half hour?

[PROSECUTOR]: I would think so.

THE COURT: Okay. Let me handle it from here. Go back to the trial table.

The bench conference was concluded, and the following occurred in open court.

THE COURT: Ms. [Juror], I'm going to appoint you the forelady of this panel. Exchange places with Mr. [Juror] who is sitting beside you.

Your obligations as Forelady are very limited. If there is a question either during the trial or during deliberations, please have it reduced to writing by the Juror asking the question so that I can consult with the lawyers about it and I can have exactly what is being asked.

Then when the panel does begin their deliberations after the case is entirely over with, everyone can say what they want to say and do what they want to do, but I will ask you

to organize and get the system going. You look like a person who can organize my children.

THE JUROR: Thank you.

THE COURT: And be fair about it, but, you know, know what you're doing.

Now, folks, I'm going to—I have a number of other things I have to do this morning and I don't want you to sit around and wait, so I will excuse you for lunch now while I do them during the lunch period. I will excuse you until 1:30. I will ask the Sheriff to take you to the jury room. Frankly, I don't know where it is myself. Sheriff, you know where it is. Lead the Jurors to the room and then make sure you know how to get back to that room after lunch. Sheriff, tell them. I guess they come through the courtroom. If we're in the process of trial in the courtroom, please don't come in. I'm going to ask you to wait until we're finished, then come through the courtroom if that is blocking you.

Now you can remain in the jury room if you want. That's your room. You can come and go as you see fit. But please be on time at 1:30 so we can get right on with this case. You are excused. Follow the Sheriff.

[DEFENSE COUNSEL]: Your Honor, is the Jury going to be sworn?

THE COURT: They're going to lunch. Why?

[DEFENSE COUNSEL]: I was just asking if they will be sworn.

THE COURT: They are excused until 1:30. And, Sheriff, tell the Sheriff not to have them come back this way. Go out the other door.

The trial transcript does not indicate that the jurors were sworn. Citing *Schowgurow v. State*, 240 Md. 121, 213 A.2d 475 (1965), Harris maintains that the trial court's failure to swear the jury mandates that we reverse. He suggests that a juror acting without having taken an oath deprives the trial court of jurisdiction. We do not disagree with the proposition that a jury that sits and returns a verdict without having been sworn would raise questions of structural error and potential want of jurisdiction. That, however, does not end our inquiry.

78

We acknowledge the rule of *Schowgurow*, but suggest that it is not apposite to the issue before us, for in that case the jurors did take the oath then prescribed by law. On appeal, the issue was not a lack of swearing of the jurors; rather, it was the oath itself that came under challenge. Schowgurow, a Buddhist, challenged the composition of both the grand jury that indicted him and the petit jury that convicted him on the basis that jurors were required to show a belief in God as a qualification for jury service. That requirement, Schowgurow argued, violated his constitutional rights. The Court of Appeals agreed, citing *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), and reversed. ("We repeat and again reaffirm that neither a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.' ") [2]

█ In the instant case, the State initially asserts that Harris's objection is waived, pointing out that defense counsel "never requested that the jury be sworn." As is apparent from the portion of the trial transcript that we have set out above, counsel twice asked whether the trial judge would administer the oath. The transcript does not reveal the court's response, only the reply that the panel would be excused for lunch. Following this recess, the trial judge heard and denied additional defense motions. When the jury returned from the recess, counsel began opening statements. The record does not reveal any further mention, or inquiry, by anyone about the jurors' oath.[3] Without deciding whether

2. Torcaso was appointed a notary public by the Governor of Maryland, but was refused a commission by the Clerk of the Circuit Court for Montgomery County because he (Torcaso) would not declare his belief in God, as required by the Maryland Declaration of Rights. Torcaso petitioned the Circuit Court for Montgomery County for a writ of mandamus, which was denied. The Court of Appeals affirmed, *Torcaso v. Watkins*, 223 Md. 49, 162 A.2d 438 (1960). Torcaso prevailed before the *Supreme Court*.

3. In his motion for a new trial, defense counsel presented, as one of the grounds for a new trial, that "[Harris] did not receive effective assis-

counsel has an obligation to see that the ministerial conduct of the proceedings is properly discharged, we are satisfied that counsel's two inquiries to the court regarding swearing of the jury were sufficient to negate the State's waiver argument.

## Jury Oath

"The right of a criminally accused person to trial by an impartial jury is guaranteed by the Sixth Amendment of the United States Constitution, made applicable to the states through the due process clause of the Fourteenth Amendment, as well as Articles 5, 21, and 24 of the Maryland Declaration of Rights." *Owens v. State,* 170 Md.App. 35, 62–63, 906 A.2d 989, *cert. granted,* 396 Md. 12, 912 A.2d 648 (2006) (footnotes omitted). "[B]oth grand and petit jurors are an integral part of our judicial system; they are regarded as fundamental safeguards to individual liberty, and, in their deliberation, each member exercises a part of the sovereign power of government in the administration of justice."[4] *Schowgurow, supra,* 240 Md. at 125, 213 A.2d 475. Maryland Rule 4–312 governs jury selection and provides, in pertinent part:

> (h) **Impaneling the jury.** The jurors and any alternates to be impaneled shall be called from the qualified jurors remaining on the list in the order previously designated by the court and shall be sworn. The court shall designate a juror as foreman.

tance of counsel [in part because] Counsel did not repeat his initial request to the court to have the jury sworn when the jury returned in the afternoon of the first day of trial when trial commenced." Harris does not argue on appeal that counsel was ineffective. Nor does he challenge the trial court's denial of his motion for a new trial.

In any event, we know of no rule that places upon counsel the burden of requesting that the jury be sworn. Maryland Rule 4–312(h) merely requires that the jury, after selection, "shall be sworn." That ministerial function is traditionally performed by the attending courtroom clerk or, in the absence of a clerk, the presiding judge.

**4.** In *Schowgurow,* the Court held that the "provisions of the Maryland Constitution requiring demonstration of belief in God as a qualification for service as a grand or petit juror are in violation of the Fourteenth Amendment, and that any requirement of an oath as to such belief ... is unconstitutional." 240 Md. at 131, 213 A.2d 475.

There is conflicting authority on whether the failure to administer the jury oath is a jurisdictional defect that nullifies the verdict. For example, in *Ex parte Benford*, 935 So.2d 421, 429–30 (Ala.2006), the Alabama Supreme Court observed that the complete failure to administer the two oaths that are required for juries in that state is a jurisdictional defect which renders the jury's verdict a nullity. *Accord, e.g., State v. Frazier*, 339 Mo. 966, 98 S.W.2d 707, 715 (1936); *State v. Bainter*, 2006 WL 1527131, *2 (Mo.App. E.D. Jun.6, 2006) (jury does not exist until sworn); *rev'd on other grounds sub nom., State v. Davis*, 211 S.W.3d 86 (Mo.2006);[5] *Keller v. State*, 261 Ga.App. 769, 583 S.E.2d 591, 593 (2003). *See generally State v. Vogh*, 179 Or.App. 585, 41 P.3d 421, 425–26 n. 6 (2002) (citing cases).

On the other hand, the Oregon Court of Appeals has noted:

Much of that formalism [regarding jury oaths] has since given way to a more functional approach. For example, courts now appear uniformly to hold that the untimely administration of the oath is subject to both waiver and harmless error analysis. Likewise, a substantial body of case law holds that other irregularities in the timing and administration of the oath are reversible error only if raised timely and if prejudicial to the defendant's interests. Most importantly, in recent years, some courts have squarely rejected the proposition that a criminal verdict by an un-sworn jury is a nullity, concluding instead that a complete failure to swear the jury is akin to other objections to the jury's competency or the impartiality of its deliberations, and likewise must be raised timely and must be prejudicial.

---

**5.** The Missouri Court of Appeals, Eastern District, held that where the record fails to show that the jury was sworn at any time before deliberation began, the trial court committed plain error and reversal was required. The Court, however, because of the significance of the issue referred the question to the Supreme Court of Missouri for the purpose of reexamining existing law, pursuant to Missouri Court Rule 83.02. The Missouri Supreme Court reversed and remanded for a new trial on the basis that the trial court had erroneously admitted other crimes evidence. The Court did not reach the trial court's failure to swear the jury.

*See, e.g., State v. Arellano,* 125 N.M. 709, 712, 965 P.2d 293 (1998); *Sides v. State,* 693 N.E.2d 1310, 1312 (Ind.1998); *see also United States v. Pinero,* 948 F.2d 698, 700 (11th Cir.1991) (per curiam) (questioning the existence of a requirement to swear the jury in criminal cases tried in federal courts).

Thus, in determining what the rule should be in Oregon, we have neither direct precedent in our own jurisprudence nor a clear consensus among other jurisdictions to guide us. Logic and principle, however, lead us to reject defendant's suggestion that a criminal verdict rendered by an unsworn jury is a nullity and therefore can be challenged at any time, including after judgment.

*Vogh, supra,* 41 P.3d at 426 (footnotes and citation omitted).

Vogh was convicted by a jury of criminal trespass. At the sentencing hearing, Vogh's counsel revealed to the court that the jury had not been sworn, a premise accepted by the trial court and later by the appellate court. Counsel then moved for a new trial, but failed to renew the motion after sentencing had resulted in a final judgment. Counsel also suggested that the jury be reassembled and instructed to deliberate anew. That proposal was rejected by both the trial court and the appellate court as contrary to Oregon law. As a final tact, counsel moved for a mistrial. That motion was denied by the trial court as untimely.

The Oregon intermediate appellate court also rejected the defendant's claim that the failure to administer the jury oath was a structural error:

We can conceive of no reason to treat a failure to administer the oath to the jury as more fundamental in nature—and thus, "structural"—than the jurors' actual performance of their duties in conformance with that oath, or the jurors' eligibility or competence to be jurors. In so observing we do not denigrate the significance of the jury's oath or its value in "vindicat[ing] a defendant's fundamental constitutional rights to a fair trial before an impartial jury." But neither do we elevate it above the other aspects of our trial

procedures that serve the same ends. The absence of the oath does not mean—at least not in any necessary way—that the defendant was unfairly tried. The oath does not stand alone as the sole procedure that guarantees that the jury will try the case based on the admissible evidence and the applicable law. To the contrary, numerous additional mechanisms serve the same purpose, including but not limited to *voir dire*, peremptory juror challenges, precautionary instructions channeling the jury's deliberations, the vigilance of an unbiased trial judge, and representation by competent counsel.

Consequently, we conclude that defendant's claim in this case should be held to the same standard that is applied to other "fair trial" objections, in particular those involving the qualifications of the jurors and the fairness or integrity of the jury's deliberations. In the absence of a timely objection, the failure to administer an oath to the jury, without any other showing of juror misconduct or prejudice, will not serve as a ground for overturning an otherwise lawful verdict. A defendant may not obtain an automatic reversal of a conviction by raising an objection to the court's failure to swear the jury only after an adverse judgment has been returned and the jury has been discharged. Instead, such an objection, like others that also seek to ensure defendant's fair trial interests, must be raised timely, and prejudice must be shown, for a defendant to be entitled to relief.

*Id.* 41 P.3d at 428–29 (footnotes and citation omitted). *Accord Sides v. State*, 693 N.E.2d 1310, 1312 (Ind.1998).

 We have found no Maryland case that addresses this point, nor have counsel referred us to any such authority. However, we need not hold at this juncture that the complete failure to swear the jury panel as required by Rule 4–312(h) renders the jury's verdict a nullity. "There is a strong presumption that judges and court clerks ... properly perform their duties." *Schowgurow, supra*, 240 Md. at 126, 213 A.2d 475; *see also State v. Chaney*, 375 Md. 168, 181, 825 A.2d 452 (2003). This presumption also applies to the trial court's duty to be certain that the jury was sworn.

In *United States v. Pinero,* 948 F.2d 698 (11th Cir.1991), the defendant urged a reversal of his conviction on the basis that the district court failed to administer the jury oath. The Eleventh Circuit rejected this challenge, primarily because the defendant failed to make an adequate record to support his allegation:

> Appellants must meet their burden of proving that the jury was not sworn before being permitted to take advantage of that fact. Suarez and Pinero offer this court no affidavits from attorneys, the court reporter, or anyone else present in the courtroom on February 1, 1990 to support their assertion that the jury did not receive its oath. Instead, appellants direct our attention solely to the record. The mere absence of an affirmative statement in the record, however, is not enough to establish that the jury was not in fact sworn. In *State v. Mayfield,* 235 S.C. 11, 109 S.E.2d 716 (1959), *cert. denied,* 363 U.S. 846, 80 S.Ct. 1616, 4 L.Ed.2d 1728 (1960) ... the Supreme Court of South Carolina held that the "[a]bsence of [an] affirmative statement in the transcript that the jury was sworn furnishes no factual support for appellant's contention that it was not. Appellant's statement that the jury was not sworn stands alone, and is, in our opinion insufficient to overcome the contrary presumption." *Mayfield,* 109 S.E.2d at 723. (citations omitted).

*Id.* at 700 (footnote omitted).

## Motion for New Trial

Motions for a new trial are governed by Md. Rule 4–331. In his extensive opinion discussing the genesis and application of the motion for new trial in *Isley v. State,* 129 Md.App. 611, 674, 743 A.2d 772 (2000), *rejected on other grounds by Merritt v. State,* 367 Md. 17, 24, 785 A.2d 756 (2001), Judge Charles Moylan concluded by observing:

> At a hearing on a Motion for New Trial, the burden of persuading the trial judge that such a remedy is called for is on the defendant, as the moving party. In the context of affirming the denial of a Motion for New Trial on the

ground of newly discovered evidence, Chief Judge Bell concluded for the Court of Appeals in *Argyrou v. State,* 349 Md. 587, 609, 709 A.2d 1194 (1998):

> As the proponent of the new trial motion, the petitioner had the burden of establishing ... newly discovered evidence. The petitioner simply failed to carry it.

(Emphasis in original).

As to the issue before us, it was then incumbent upon Harris to persuade the trial court that, in fact, the jurors had not been given an oath. We believe the observations in *Pinero* to be persuasive. Harris offered no evidence at the motion hearing, nor did he even argue the point of the suggested non-swearing. After a brief argument on Harris's assertion that *voir dire* was incomplete, defense counsel submitted on the other grounds, saying, "As to the other grounds, Your Honor, I would suggest they speak for themselves in the motion I filed."

Thereafter, the court said:

> *The Jury was sworn.* What [defense counsel is] talking about—I was trying to figure out what he was talking about there. *The Jury was sworn,* but what happened is they came over on a day we actually didn't start the trial until the next day. And I hadn't even voir dired the Jury yet and we started over. He wanted me to swear—I didn't know what he meant by it. *But before the trial began, [the] Jury was sworn.* So, I think that's what he ... was referring to. My memory is backed up by the file.
>
> \*　　\*　　\*
>
> I'm not sure of the date, but like the 28th versus the 29th, when the case began, you requested that I swear them ahead of time and this was before the Voir Dire took place. I couldn't reach them that day. We started the next day. That's when the voir dire took place. *That is when the Jury was sworn.*

(Emphasis added).

At the hearing on his motion for new trial, Harris might have presented testimony or affidavits from jurors, court staff, or others present at the time of jury selection or the com-

mencement of trial, to reflect a failure of the required oath. The record reveals that the recording of the trial was made by videotape. Surely the stenographer's recording would have provided proof of the swearing, or lack of swearing, of the jurors. No such information was before the court, however.

Moreover, in denying the motion for a new trial, the trial judge found to the contrary, stating "that the evidence has been properly presented, ... *the jury was sworn* and that the motion for a new trial is denied." [6] (Emphasis added.) *See Carlisle v. State*, 936 So.2d 415, 422 ¶ 24 (Miss.App.2006) (although record did not contain references to reading of oath, record revealed references by judge to oath).

█ While the record may not be sufficient to establish conclusively that the jury was sworn, we are satisfied that the court's references to its recollection of the swearing of the jury, and Harris's failure to offer evidence to the contrary, result in Harris having failed to carry his burden of persuasion.

█ We are mindful that a trial judge's grant or denial of a motion for new trial is seldom, if ever, disturbed on appeal. *See Mack v. State*, 166 Md.App. 670, 683–84, 891 A.2d 369, *cert. denied*, 392 Md. 725, 898 A.2d 1005 (2006). We have earlier, in this opinion, suggested that abject failure to swear jurors is structural and fundamental error with jurisdictional implications. In our view, had Harris carried his burden of persuading the trial judge that the jury had not been sworn, the court would have been obliged to consider whether the error was fundamental and structural and thus, whether to grant a new trial as a matter of law.

### 2. *Whether the trial court abused its discretion in restricting defense counsel's closing argument.*

Eyewitness testimony was essential to the State's proof of criminal agency. Harris next complains that the trial court

---

6. Defense counsel averred in his motion for a new trial that he had been ineffective for failing to follow through with his "request" that the court administer the oath. He does not raise this issue before us.

erred in restricting his summation relating to the reliability of eyewitness testimony.

The jury heard testimony that blood was found in the back seat of the car that Harris had been driving. A sample had been submitted for DNA testing, but it did not match Harris's blood. Officer John Peer testified that, in his opinion, the blood recovered from the back seat most likely came from the victim. He explained that the victim was struck in such a manner as to break the side windows of the "striking" car; the impact pinning the victim between a parked car and the moving car driven by Harris.

In his opening statement, defense counsel brought up the case of a defendant who, after having been convicted, was later exonerated by DNA evidence, even though there were eyewitnesses to the crime. Counsel said:

[DEFENSE COUNSEL]: Ladies and Gentlemen, I want to take you back to 1984, I guess. A man named Curt Bloodsworth. He was accused of committing a very serious offense.

[PROSECUTOR]: Objection.

THE COURT: Why?

[PROSECUTOR]: Discussing another case ... as opposed to what the evidence will show.

THE COURT: Does it have some kind of relationship to this case?

[DEFENSE COUNSEL]: Sure it does, Your Honor....

A bench conference ensued, at which defense counsel explained:

[DEFENSE COUNSEL]: The Curt Bloodsworth case involved a very serious sexual assault and murder of a six year old girl back in 1984 in Baltimore County. He was identified by five eyewitnesses as being at the scene. There was other incriminating evidence to connect him to the crime. He was tried twice and found guilty twice. He was finally exonerated because DNA testing was done of evi-

dence that had been retained, clothing of the little girl, and that DNA testing exonerated him.

There is DNA testing done here. There was blood testing that was done and that is essentially what I intend to argue to this Jury. And I think it's extremely relevant to what we have here is a case involving eyewitness testimony and other circumstantial evidence and yet there is physical evidence as well.

THE COURT: Objection sustained. You can't go into this other case at all.

[DEFENSE COUNSEL]: To what extent can I?

THE COURT: Not at all. . . .

In both its closing argument to the jury, and its rebuttal argument, the State emphasized the reliability of the eyewitness identification testimony offered by the State's witnesses Michael Hineline and Leon Pinkett. In his summation, defense counsel undertook an attack on the reliability of eyewitness testimony:

[DEFENSE COUNSEL]: . . . Eyewitness evidence has been used to convict many—

[PROSECUTOR]: Objection.

[DEFENSE COUNSEL]: Many guilty people.

\* \* \*

THE COURT: [To the prosecutor] What are you objecting to then?

[PROSECUTOR]: Discussing another case. We had an issue in opening statement about discussing another case.

[DEFENSE COUNSEL]: I haven't mentioned a case.

THE COURT: Well, I didn't hear it. So go ahead.

[DEFENSE COUNSEL]: Eyewitness evidence is something that's very dangerous. It's been used to convict many innocent persons. These people were eventually found innocent—

[PROSECUTOR]: Objection.

[DEFENSE COUNSEL]: Because physical evidence exonerated them.

Another bench conference was convened. Defense counsel explained that he was cautioning the jury about the unreliability of eyewitness testimony. The trial court sustained the prosecutor's objection, warning counsel that he could not refer to "other cases." Although defense counsel protested that he was not referring to another specific case, the trial court found that his closing argument referred to other cases "indirectly," and ordered counsel to avoid such references.[7] Counsel thereafter refrained from further discussion of the potential unreliability of eyewitness testimony.

In *Smith v. State*, 388 Md. 468, 486–88, 880 A.2d 288 (2005), the Court set forth the accepted principles and concepts of closing argument in criminal prosecutions.

"It is well settled that a criminal defendant's Sixth Amendment right to counsel guarantees, in part, an opportunity for counsel to present closing argument at the close of the evidence." *Holmes v. State*, 333 Md. 652, 658–59, 637 A.2d 113 (1994) [citing cases]. The United States Supreme Court in *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), discussed the importance of closing arguments:

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of

---

**7.** We glean from the record that the court did not actually hear the words spoken by defense counsel, to which the State objected. Instead, it relied on the State's assertion that counsel was "Discussing another case."

the case will best promote the ultimate objective that the guilty be convicted and the innocent go free.

*Id.* at 862, 95 S.Ct. 2550 (internal citations omitted).

In *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974), this Court discussed the scope of permissible closing argument:

> As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range. Counsel is free to use the testimony more favorable to his side of the argument to the jury, and the evidence may be examined, collated, sifted and treated in his own way.... Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom; the prosecuting attorney is as free to comment legitimately and to speak fully, although harshly, on the accused' s action and conduct if the evidence supports his comments, as is accused' s counsel to comment on the nature of the evidence and the character of witnesses which the prosecution produces.

*Id.* at 412–13, 326 A.2d 707. Judge O'Donnell, writing for this Court continued to explain:

> While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments to opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined-no well-defined bounds beyond which the eloquence of an advocate shall not soar. [Counsel] may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. [Counsel] may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Id.* at 412–13, 326 A.2d 707 (internal citations omitted). We also have held that in closing argument "[j]urors may be reminded of what everyone else knows, and they may act upon and take notice of those facts which are of such general notoriety as to be matters of common knowledge." *Wilhelm,* 272 Md. at 438, 326 A.2d 707.

Thus, during closing argument, counsel may "state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence," *Henry v. State,* 324 Md. 204, 230, 596 A.2d 1024 (1991), in addition to argue matters of common knowledge, *see Wilhelm,* 272 Md. at 438, 326 A.2d 707. "Subject to the trial court's discretion, both the State's Attorney and defense counsel are given wide latitude in the conduct of closing argument,. including the right to explain or to attack all evidence in the case." *Trimble v. State,* 300 Md. 387, 405, 478 A.2d 1143 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985). Closing argument, however, is not without limitation, in that the court should not permit counsel to state and comment upon facts not in evidence or to state what he or she would have proven. *Wilhelm,* 272 Md. at 414–15, 326 A.2d 707. What exceeds the limits of permissible comment or argument by counsel depends on the facts of each case.

We are satisfied that the trial court acted within its broad discretion in limiting even inferential references to unrelated cases and circumstances. The Court noted in *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974), that control of the trial "rest[s] largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an *abuse of discretion* ... likely to have injured the complaining party." (emphasis in original).

While "[j]urors may be reminded of what everyone else knows, and they may act upon and take notice of those facts which are of such general notoriety as to be matters of common knowledge [,]" *id.* at 439, 326 A.2d 707, we are not

prepared to conclude on this record that the trial court abused its discretion by precluding defense counsel from mentioning that faulty eyewitness testimony has been utilized in some cases to obtain the conviction of an innocent person.

### *3. Whether the trial court abused its discretion in admitting photographic evidence.*

█ Finally, Harris challenges the trial court's decision to admit three photographs taken of the victim at the scene. The defense moved *in limine* to preclude the admission of photographs depicting the victim's body, arguing that this evidence was unduly prejudicial because the photographs "provoke an[ ] emotional response."

At trial, the State called Mitch Brooks, a firefighter/paramedic who holds a second job with a private ambulance service, and who was working in this capacity nearby when he heard "one real loud crash." Brooks and his colleague arrived at the scene, and were told by bystanders that a person had been hit by a car. Brooks searched for the victim, and was told that the victim was under a truck. He saw "a gentleman wedged underneath the truck at that point[.]" Brooks observed:

> Deformity to the lower extremities. I believe his pelvis was fractured. His head was twisted. I believe he had serious cervical spinal injuries. Part of this scalp was evulged so you could see the actual man's scalp. I kind of had to pull him out to make sure that he was dead and pronounced him on the scene.

Brooks then recounted the injuries in graphic detail, and opined where he thought the victim had been struck. The State then offered the three photographs at issue, State's Exhibits 2A, 2B, and 2C, to accompany Brooks's testimony. The three challenged photographs depicted the deceased, and his injuries, in considerable graphic detail.

Defense counsel objected, unsuccessfully, to the admission of the photographs, and urges the same arguments before us on appeal. The State, on the other hand, maintains that "the

photographs were probative of several issues that the State was required to prove[,]" *viz.* the manner in which Harris drove, his *"mens rea,"* and his "knowledge, after the fact, that the accident had resulted in death." The State also asserts that the photographs corroborated witness accounts of the accident, and the victim's injuries.

While we fail to discern how the photographs in question supported proof of Harris's *mens rea,* or his "knowledge, after the fact, that the accident had resulted in death[,]" we nonetheless hold firmly to the proposition that the admission of photographic evidence is committed to the sound discretion of the trial court. *Roebuck v. State,* 148 Md.App. 563, 599, 813 A.2d 342 (2002).

The Court of Appeals recently addressed the admission of photographic evidence in an automobile negligence case. In *Mason v. Lynch,* 388 Md. 37, 48, 878 A.2d 588 (2005), the Court reiterated principles that obtain in both civil and criminal cases:

> Generally under Maryland law, in both civil and criminal cases growing out of occurrences at particular places, photographs of these places, such as accident or crime scenes, including photographs of things involved, injured persons, or victims, are normally considered to have some relevance. Along with other reasons for relevancy in particular cases, such "photographs have also been admitted to allow the jury to visualize the" nature of the occurrence, *i.e.,* the "atrociousness of the crime" or the extent of the accident. *Johnson v. State,* 303 Md. 487, 502, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). Moreover, "[i]t is an unquestioned rule that photographs may be introduced in evidence, either in a civil or criminal proceeding, to illustrate the description of a person, place, or object so as to explain or apply the evidence." *Corens v. State,* 185 Md. 561, 570, 45 A.2d 340 (1946).

As with other evidence, photographs must be relevant to be admissible, and their prejudicial effect must not outweigh their probative value. *State v. Broberg,* 342 Md. 544,

552–53, 677 A.2d 602 (1996). "[P]hotographs may be relevant and possess probative value even though they often illustrate something that has already been presented in testimony." *Id.* at 553, 677 A.2d 602. Photos "do not lack probative value merely because they illustrate a point that is uncontested." *Id.* at 554, 677 A.2d 602. Indeed, " 'photographs, when properly authenticated, are as a general rule held to be admissible ... to illustrate a witness' testimony[.]' " *Mason, supra,* 388 Md. at 50, 878 A.2d 588 (quoting *Sisk v. State,* 236 Md. 589, 591, 204 A.2d 684 (1964)).

> Therefore, in determining the admissibility of any photograph, the trial judge must make a two-part assessment: first, the judge must decide whether the photograph is relevant, and second, the judge must balance its probative value against its prejudicial effect. We will treat the trial judge's findings on these matters with great deference.

*Broberg, supra,* 342 Md. at 555, 677 A.2d 602.

We are satisfied that the trial judge engaged in the appropriate balancing. Moreover, the photographs were illustrative of the graphic testimony presented by Brooks. We discern no abuse of the trial court's considerable discretion in admitting the three photographs at issue.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**