MILLER *v.* STATE.

[In Banc. No. 21074.]

1. JURY.  *Accused entitled to have capital case heard by "legal jury"*
   In capital cases the accused is entitled to have his case heard
   and considered by a legal jury, that is, a jury impaneled and
   specially sworn to "well and truly try the issue between the
   state and the prisoner, and a true verdict give according to
   the evidence and the law," as provided by section 1483, Code
   of 1906.

2. JURY.  *Oaths on voir dire and for trial different.*
   The *voir dire* oath administered to the jury for the purpose of
   ascertaining qualifications of jurors is different from the oath
   required to be taken to try the issue joined between the state
   and the prisoner and a true verdict render.

3. JURY.  *Unsworn jury incompetent, though subsequently sworn.*
   An unsworn jury to try the issue joined in a capital case is in-
   comptetent to recieve and act upon evidence submitted to it,
   even though it be subsequently sworn to try the issue joined,
   after all evidence is submitted and before verdict is rendered.

4. JURY.  *Oath to try issues essential, although jury laws directory..*
   While the jury laws are merely directory, yet the oath of the jury
   to try the issue, as distinguished from the preliminary impanel-
   ing oath, is essential to a legal jury, according to the directory
   jury statute, as well as section 1483, Code of 1906.

APPEAL from circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.
John Henry Miller was convicted of murder and he
appeals.

*Brewer, Brewer & Brewer* and *Ramsey,* for appellant.

The outstanding and glaring error committed in the
trial of this case is, that the jury who tried the defend-
ant and who found him guilty, with the punishment of
life in the penitentiary, were not sworn to try the issue

joined between the defendant and the state of Missis-
sippi, until all the evidence, both for the state and
the defendant, had been introduced and both sides had
closed their case and the instructions had been passed
upon by the court, and until after the jury had had
some two or three hours in which to deliberate over
the case.

In Sec. 1241 of Hemingway's Code, we find the law ap-
plicable to the swearing of jurors in a capital case.
In this section of the code we find that it is the law that
"the jurors in a capital case shall be sworn to well
and truly try the issue between the state and the prison-
er, and a true verdict give according to the evidence
and the law." In the case now before the court it is ad-
mitted by the trial judge that the jury was impaneled,
that the testimony both for the state and for the de-
fendant had all been introduced, and that both sides
had rested, that the instructions had been passed upon,
and that court recessed for about two hours and upon
the reconvening of court it was called to the court's
attention that the jury had not been sworn in accord-
ance with the law, and that then and there the court for
the first time. asked the jurors to stand up and be sworn.
But, before this was done, counsel representing the
defendant asked that a mistrial be entered and the
jury discharged. This motion the court denied, and
then proceeded to swear the jurors to try a case which
had already been tried.

We want to be frank with this court and state that
if this question has ever been raised in the state of
Mississippi, in the manner and form in which it is
raised in this case, we have not been able, after a very
diligent search, to find the authority. It is true that
the question has been raised as to the failure to swear
a jury in a misdemeanor case, but the objection, in
those cases which are reported, was not raised until
after the verdict, and of course, under our statutes the

error was cured by the verdict; and the courts, in deciding such cases, held that the defendant could not be heard to complain after he had allowed his case to go to the jury and allowed them to bring in a verdict without raising an objection to the jury being unsworn. But in this case we are confronted with a different proposition. Just as soon as it developed and was made known to the court that the jury had not been sworn, counsel asked that a mistrial be entered and the jury discharged. Counsel did not take the chances of a verdict in the defendant's favor and wait until after verdict before raising the objection, but before the jury was sworn, and before anything further was done after it was made known to the court that the jury had not been sworn, every possible objection was made by counsel to the continuing of the trial, and every conceivable motion was made in an effort to induce the court to enter an order of mistrial and discharge the jury.

In addition to the motion for a mistrial, at the proper time and place, counsel filed a motion for arrest of judgment, because of the fact that the verdict was rendered by a jury that had not been sworn according to law, and by a jury who necessarily could not, under oath, try the issues between the state and the defendant according to the evidence and the law, for the reason that, before being sworn, the evidence had all been introduced. This motion was also overruled.

The court will bear in mind that when the trial court adjourned for the noon hour on the day on which this case was being tried, the jury had not been sworn; that at that time they had heard all the facts, and the case so far as the evidence was concerned, was closed; that nothing further remained to be done but for the jury to be handed the instructions of the court, and for counsel to make their respective arguments. As will be shown by the record in this case, at page 220 thereof,

the defendant attempted to show by one of the jurors that during the recess of the court, and after the testimony had been closed, that all of the jurors discussed the case and attempted to show that each and every one of them, and especially that particular juror, had made up their minds as to the verdict that should be rendered, and as to the verdict that was rendered and handed to the court and upon which the judgment of the court was entered. The trial court refused to allow any testimony of any kind to this effect. As stated by counsel at the time the questions were asked they were purpose of showing any illegal conduct on the part of the juror placed on the stand, or of any of the other jurors, and that it was not for the purpose of trying to impeach anything that was done by the jury after it was sworn and impaneled as a jury; but, as stated by counsel at the time the questions were asked they were asked to find out what occurred prior to the time that the jurors were sworn to try the issue between the defendant and the state of Mississippi. At the time of the trial of this case in the court below counsel were and are now aware of the fact that a juror is incompetent to impeach his verdict about such matters as occurred in the jury box after he is sworn and impaneled as a juror; but, on the other hand, we do not find any law anywhere whereby a defendant is precluded from questioning a juror or jurors about things that happened prior to becoming jurors. We respectfully submit that the jury in this case was not a legal jury at the time the things happened about which the particular juror was being questioned. The jury had not been sworn to try the case and the twelve men as they then stood were no more than any other twelve men that the court might have called together, without an oath of any kind, for the purpose of trying the defendant.

It must be admitted that if a witness were put on the stand and allowed to testify in a criminal case, without

being sworn, that he could not then be sworn and any effect he given to this testimony, especially when objected to. In other words, the oath of a witness is to tell the truth, and nothing but the truth, and this oath would not relate back to something which he had already told. And it is a general rule of law that where a witness testifies without having been sworn, the verdict will be set aside. In support of this contention we cite the case of *Barr* v. *State of Mississippi,* reported in 23 So. 628. This was a case where a verdict was probably obtained upon the testimony of one John Lunde, a witness on the part of the state who was not sworn as such witness. This fact was not discovered until after the defendant had been convicted. A motion for a new trial was made and refused and an appeal was had to this court. In writing the opinion in this case Judge TERRAL had the following to say: "By the common law, evidence is given only under oath. In *Hawkes* v. *Baker,* 6 Maine 72, it is said to be the duty of the court to see that the oath is administered to the witness and that the defendant has the right to presume that a witness taking the stand has been sworn, and that a party convicted on unsworn evidence had not enjoyed the protection of the laws to which he is entitled."

If this be true, why is it not equally necessary that a jury trying a defendant in a capital case be sworn before the introduction of the evidence? It will probably be argued that the section of the code requiring that the jurors be sworn in capital cases does not say when they shall be sworn, and that the swearing of them at any time is sufficient. Certainly this is neither the spirit nor the letter of the law. The statute plainly says that the jurors shall be sworn to try the issue between the state and the prisoner. What is the issue in this case and when was the issue made and raised? Not by the argument by the counsel for no mention is made in the section of the code that any attention

should be paid to what counsel may say, and there is no requirement that the jurors be sworn to decide the case on the arguments presented by the state or for the defendant. And the law does not say that the jurors shall be sworn to try the case on the law, and that alone, but that it does say that a true verdict shall be rendered according to the evidence and the law. This court being composed of men of sound common sense, and men of experience in the trial in circuit courts of criminal cases, are fully aware of the fact that a defendant in a criminal case is being tried when the testimony is being introduced and that, in nine cases out of ten, at the conclusion of the testimony, the jurors have made up their minds as to what will be their verdict, and that, in many cases, very little, if any attention, is paid to the instructions of the trial judge, and equally as little to the argument of counsel. In this case, while the facts were being presented to the court, when the issue was being made, that is to say, when the state was attempting to show the defendant to be guilty of murder, and when the defendant was attempting to show that he was not guilty, the jury had not been sworn. What is the issue in a case of this kind? Clearly it is the guilt or innocence of the defendant. The state on the one hand contends that the defendant is guilty, and the defendant, on the other hand, contends to the contrary. It is while this is being done, while this proof is being made, that the real issue in the case is being tried. Then, if this be true, can it be argued or insisted upon that the jury that tried this defendant, John Henry Miller, was sworn to try the issue between the state and the prisoner. It cannot be said that the instructions constitute the issue and the sole issue in the case. The jury has nothing in the world to do with the granting or refusing of these. They simply take the instructions as handed them by the

court, and which instruct them as to the law under which the case is to be tried.

The latest case we have been able to find which bears on the question here being discussed is one from Texas, that of *Howard* v. *State*, L. R. A. 1917D, at page 391. In the opinion in this case which was handed down by Judge DAVIDSON. It was said as follows: It has been the law in Texas, both by constitution and statute, that an accused is entitled to a trial by a jury. It has not been held, so far as we have been able to discover, that a jury could possibly be a jury until it has been sworn to try the particular case. It is not a trial by jury, for, as Judge DAVIDSON said, a jury cannot be said to be impaneled until it has been sworn. If it be true that a jury is not a jury to try a case until sworn, as the authorities hold, then appellant was tried by a jury unsworn.''

If the trial court in this case did not commit error by refusing to enter a mistrial and discharge the jury, then section 1241 of Hemingway's Code is a nullity and means nothing, for it is admitted that if the jury is not sworn and no objection thereto be made before verdict, that the error is cured by verdict, and, on the other hand if objection is made before verdict, according to the opinion of the learned trial judge, the trial court would have the right to have the jury brought in and sworn two minutes before the verdict was finally rendered and this would be binding on the defendant. Certainly this court will not hold that it was the intent of the legislators who passed this statute, being a special statute applying to capital cases and capital cases alone, that twelve men should be allowed to sit in the jury box and hear all the facts in the case, both for the state and for the defendant, and then, after having had time to consider these facts and to make up their minds as to what verdict they would bring in, for them

to be called up by the court for the first time and sworn
to try the issue between the state and the prisoner.

The oath required to be administered to the jurors in
a capital case is a solemn thing. The jurors have in
their hands the life and liberty of the one being tried.
It is for them to say whether or not he shall forfeit
his life to the state, or whether or not he shall be con-
fined in the state penitentiary for the term of his
natural life, or whether or not he shall be discharged.
The jurors are the judges of the credibility of the wit-
nesses. It is their duty to observe the manner of the
witnesses while testifying, and they may and should
take into consideration his appearance on the stand,
his manner of testifying and other circumstances. Not
being under oath while listening to the testimony during
the progress of the trial, they are under no greater
duty than is a disinterested spectator in the courtroom.
In other words, the jurors in this particular case while
all the testimony was being introduced, were no more
than the persons who happened to be in the courtroom
as spectators. There was no obligation upon these
jurors either to the state or to the defendant. They had
promised nothing. They had not sworn to do anything.
They sat there and made up their minds as to the
guilt or innocence of the defendant, and before becom-
ing competent jurors in the case by being sworn, had
clearly disqualified themselves, on account of the fact
that at the time they were sworn to try the issue be-
tween the state and the prisoner, they had heard all
the facts connected with the alleged homicide and were
familiar with every detail of the case. If, for some
reason or other, a mistrial had been entered before the
jurors were sworn to try the issue, could it be said
that at another trial of the case any one of the twelve
jurymen would make a competent juror Then, how
could it be competent for these jurors to try this de-
fendant, when at the time the oath was administered to

them, they had already not only formed and expressed an opinion but they had absolutely made up their minds and had arrived at their verdict, which was guilty as charged, with life imprisonment in the penitentiary.

*N. T. Currie,* for appellee.

The next error assigned and argued by the appellant is that, "the jury was not sworn to try the issue between the defendant and the state of Mississippi." If by the use of the language above quoted from the brief of counsel for the appellant, it is to be understood to have been the intention of counsel to state as a fact, from the record, that the jury in this case was not sworn to try the issue between the state and the defendant, we must respectfully take issue with them as to the fact and assert that the record does show as a matter of fact that the jury was sworn to try the issue between the state and the defendant.

Counsel express frankness in their discussion of the question of first impression in the state, not having been ever raised and presented to his court in a similar case in the same manner and in similar circumstances.

We are willing that the court should try the question as one of first impression, and shall undertake to demonstrate by law, logic, reason and fact, in this case, that the jury was sworn to try the issue joined between the state and the defendant. We believe counsel are correct in the statmnt that there is no decision of the court in section 1241, Hemingway's Annotated Mississippi Code and section 1483, Mississippi Code of 1906, so the statute and the law must for the first time be reasoned out and applied to the facts in this case.

We have not taken occasion, for we have not had the time, to go into an investigation of the statutes of other states pertaining to the impaneling of juries to try criminal cases and we are not prepared to say whether, under the statutes of all other or any other

states, there is required to be an oath administered to each proposed juror before his *voir dire* examination. Nor do we know, nor have we had time and opportunity to investigate the statutes of other states to ascertain whether similar qualifications and similar *voir dire* examinations are required and conducted by the lawyers and the trial courts as provided in and required by our own statutes. But, we assert in the outset that under our system no jury ever sat in the box to try a case, that is an issue, without first being sworn to well and truly answer all questions propounded to him by the court or counsel touching his qualifications as a juror in the trial of the case.

Under our system the names of the parties litigant are stated, the nature and cause of the controversy is stated, that is the issue. The proposed juror is fully examined under oath touching all matters affecting or which might affect his competency as a juror, such as his relations by affinity or consanguity to either of the parties of the issue, or the attorneys trying the case, his interest, if any, in the controversy, his business relations, if any, with the parties at issue, his bias, prejudice, ill-feeling and desire, if any, to serve on the jury and to render a verdict either one way or the other. He is fully catechised as to his knowledge of the facts in the case, if any, and how, when and where, and from whom obtained, and finally, he is asked in substance, the following question: "If you are accepted as a juror to try this case, will you try the same according to the law and evidence and render a fair and impartial verdict on the law and evidence as you understand the same, and that alone?" Such, in substance, is the nature, scope and character of the *voir dire* examination of a juror in the courts of Mississippi and under the laws of the state of Mississippi.

We ask what more binding oath could be administered to a juror, well and truly to try the issue then joined?

We submit that under our system, when a juror has been called and sworn and examined in the manner aforsaid and has been accepted by both the plaintiff and defendant, no matter what the nature and character of the issue may be, such juror, in legal effect, in law reason and logic has already ben sworn to try the issue and a true verdict to render according to the law and evidence in the case.

Under such an oath and in the solemnity of the court room, in the stern presence of the judge, the witness, and the lawyers, amidst the turmoils of the legal combat, how could it be said with reason that the juror, sitting in the box, sworn, examined, selected and examined in the manner above outlined, would be simply an idle spectator or onlooker? We assert on the contrary that he is an attentive listener. His ears and his conscience are bound to the facts by an oath.

We, therefore, submit that the requirements of section 1241, Hemingway's Annotated Mississippi Code 1906, to the effect that the "The jurors, in a capital case, shall be sworn to well and truly try the issue between the state and the prisoner and a true verdict give according to the evidence and the law" have been made and complied with under the oath of the juror when he has been accepted in the manner above outlined to try the issue.

Then, again, we assert that under the provisions of section 2718, Mississippi Code of 1906, and section 2211, Hemingway's Code 1917, and section 1483, Mississippi Code 1906, is merely directory, and that strict and literal compliance with the provisions of said section 1241, Hemingway's Code 1917, and section 1483, Mississippi Code 1906, is not required or necessary, but that substantial compliance thereto is all that is required or necessary and that the oath and examination and qualifications of the jury, as above outlined and as required by our statutes, and as practiced by our courts, is the

substantial compliance with the provisions of section 1241, Hemingway's Code 1917, and section 1483, Mississippi Code 1906, pertaining to the impanelling of a juror.

But, the record in this case shows affirmatively that the jurors in this case, was actually sworn by the court in the exact manner and exact language required and used in section 1241, Hemingway's Code 1917, and section 1483, Mississippi Code 1906.

However, counsel for the appellant contend that this oath must have been administered before any evidence at all was taken, and that the swearing of the jury in strict accordance with this statute after the evidence had all been taken, or before the instructions were granted by the court and read to the jury and before the case had been argued by counsel and before the jury had retired to consider its verdict, did not meet the requirements of the statute. We must respectfully disagree with counsel.

At the outset the jury was sworn by the court to render a fair and impartial verdict according to the law and evidence. Under that oath the jury heard all of the evidence. Under our system of law and practice a jury cannot begin its deliberations until after all the evidence on both sides has been introduced and until all the instructions of the court have been granted and read, and until after all the arguments of counsel on both sides have been made, and not until the jury has been, by the court, put in possession of all of the necessary facts in the case, the exhibits, documentary evidence, record evidence, and by the court, ordered with it and all the evidence in the case and the instructions of the court, to retire and consider of its verdict, then and not until then in the secrecy of the jury room, secluded and shut out from the rest of the world, and even the court; then the jury, as a matter of law, begins its deliberations upon its verdict. In a capital case,

it is a matter of law, a matter of custom, a matter of practice, a matter of common knowledge, that with each adjournment or recess or temporary interruption in the trial in which the jury retires from the court room and goes out of the immediate presence of the court, it is instructed by the court, that it cannot discuss the case either among themselves or with others, and that their doing so may bring down upon them the penalties of the law, that they are forbidden by the law to enter upon deliberations and to formation of a verdict until after the case has ended and they have retired to the jury room for the purpose of making up their verdict.

If counsel grow technical, and it seems they have, we do so, and assert that technically, under our law, the practice of our courts and the system of our jurisprudence, a jury, technically cannot and does not begin its trial of the issue joined between the plaintiff and the defendant until it has retired to the jury box for that purpose; that is to make up and render its verdict and that means to decide or determine the issue. Technically it is in the jury box that the jury well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law.''

We, therefore, submit that the law and the reason for the law is with the state on this assignment of errors. The cases of *Barr* v. *The State,* 23 So. 628, and *Hawkes* v. *Baker,* 6 Maine ;72, are not authorities in point, nor are they analogous, for in these cases the matter pertained: First, to a witness and the testimony of a witness in the case. Second, no oath at all of any sort had been administered to the witnesses.

Nor is the case of *J. L. Howard* v. *The State of Texas,* Mississippi reports annotated, 1917D, page 391, cited by counsel for the appellant in their brief, an authority in point. It appears from the decision in that case

that no special venire was requested, ordered and granted as in the case at bar. In the contrary, it appears that Howard was tried by what in our courts, would be termed one of the regular weekly petit juries impaneled and sworn on the first day of the beginning of each week of a term of court to try such, and any and all issues which might be submitted to them.

In the case at bar the jury which tried the appellant was selected and impaneled from a special venire, and each juror was specially, specifically, and directly sworn as such for the trial of the definite case, that is issue, between the state of Mississippi and the appellant.

Then, again, in the case cited by counsel when the attention of the trial court was called to the fact that the jury trying the case had not been sworn in as a body to try the same, the trial court instead of there and then swearing the jury in as a body to try the issue as was done in the case at bar, the court, so says the opinion, informed this jury it was not necessary to swear them as a body as all the jurors had been sworn at the beginning of the week, and such swearing was sufficient. The court, in its opinion, said: "We do not understand the trial court to be correct in his statement of the law." The fact in the case of *Howard* v. *The State of Texas,* and in the case at bar, are, therefore, seen to be entirely different. Moreover, the Howard case was tried under the statutes of the state of Texas and it does not appear in the brief of counsel nor in the laws of the state of Texas, that there is a Section similar to section 2718, Mississippi Code 1906, and section 2211, Hemingway's Code 1917, declaring all the provisions of law in relation to the listing, drawing, summoning and impanelling of jurors to be merely directory.

Moreover, the opinion of the court in the case of *Howard* v. *The State of Texas,* was not unanimous. PENDERGAST, Justice, rendered a dissenting opinion,

and in his dissent discussed a case which is exactly and precisely on all fours with the case at bar. It is the case of *Caldwell* v. *The State,* 12 Texas App. 315, in which the jury was selected from a special venire and the court, instead of swearing each juror individually as selected, as required by state articile 698, waited till all twelve jurors had been selected and then to all together administered the oath as prescribed by said article 714. As stated by Judge HURT, who wrote the opinion of the court in that case, the question was first raised by a motion for a new trial, just as was done in the case at bar.

The whole court, through Judge HURT, said: ''There was no request made by the defendant to have the jurors sworn as selected, nor did the defendant object to their being sworn in a body. The first complaint is heard in the motion for a new trial, and in his motion he does not state that he was not aware of proceedings at the time they were had. These irregularities are now urged here as a ground for reversal. We are of the opinion that they came too late. If the defendant had demanded that the jurors be sworn as selected, and this demand had been refused, we would have been compelled to reverse the judgment. If the objection to their being sworn in a body had been interposed a very nice question would be presented for our decision, but the defendant did neither.

The question presented is this: Will this court reverse a judgment for these irregularities when the defendant made no objection at the time, taking his chance of being acquitted by this jury thus sworn, and holding in reserve this matter to be used in his motion for new trial and, on failure then, to be used in this court as ground for reversal of the judgment. We think not.'' Judge PENDERGAST then proceeds to say:

In that case the death penalty was inflicted, and the case affirmed. This Caldwell case is precisely in point herein; is the law, and should be decisive against ap-

pellant. It has always been held by this court that our statutes regulating the formation of a jury in a capital or other felony case are not mandatory, but directory only. *Murray* v. *State,* 21 Tex. App. 466, L. S. L. R. A. 1917D, 522; *Jackson* v. *State,* 20 Tex. App. 664, 18 S. W. 643; *Roberts* v. *State,* 30 Tex. App. 291, 17 S. W. 450; and a great many other cases."

It is submitted by the appellee that the dissenting opinion in the case of *Howard* v. *The State,* cited by counsel for the appellant in their brief, is the correct announcement of the law, unanswerable in reason, just in its application. To use it seems that the appellant was unfortunate in citing this case for two reasons:

First, the opinion of the court is not an authority upon which he can rely because not in point. Second, it brings to light the dissenting opinion, the reasoning in which is unanswerable, and contains a citation of the case of *Caldwell* v. *The State,* 12 Tex. App. 315, which is a case directly in point as an authority in favor of the contention of the appellee, being a case based, as is the case at bar, upon the question arising in the selection and impaneling of a jury from a special venire, and in which, just as in the case at bar, a special oath was administered to each juror as he was called from the venire, and it was held that that oath was equal in all respects and as binding in all respects as could possibly be any other oath required, and was a substantial compliance with the law which is exactly and precisely what the state contends in the case at bar.

It is, therefore, submitted and urged that there is no merit in this assignment of error. We have already discussed the question of motive for the murder and we shall not have more to say upon that subject in this brief. Counsel for the appellant in their brief discuss some questions of the admissibility of certain evidence. We have read the record in this case rather scrutinizingly and there is no reversible error in the action of

the court with reference to excluding or admitting evidence.

All of the threats and the overt acts proved by the state in this case were competent. None of them were so remote in time or so uncertain and indefinite in their nature and character as to render them inadmissible. They all proved and tended to prove directly the *animus* of the appellant toward the deceased and to establish motive and malice. What further we may have to say upon all of the questions we shall say in our oral argument.

In conclusion, we submit, that this record discloses murder, such a case as that in which the death penalty instead of life-time imprisonment in the penitentiary might justly have been visited upon the appellant. It was, indeed, a bloody deed, a tragedy, a corrupt and malicious murder—the killing of this little negro girl by the appellant under the circumstances, for the reasons and for the motive proved in this case. There is no reversible error. as a matter of law, and we urge the court to affirm the case.

HOLDEN, J., delivered the opinion of the court.

John Henry Miller was convicted on a charge of murder in Coahoma county, from which he appeals.

The main point urged for reversal is that the accused was denied his right of a trial by a legal jury, under the Constitution and law. This point is decisive of the appeal.

Here is what happened in the trial court: The jurors were sworn to answer questions as to their qualifications on the *voir dire* examination. After it apeared that twelve jurors were qualified to sit in the case, they were accepted by both the state and the defendant. Immediately following the acceptance of the jury, the testimony for the state and the defendant was introduced,

and both sides rested. At this juncture the court took a recess for about two hours, and on reconvening the instructions were passed upon. It was then discovered and made known for the first time that the jury had not been sworn "to well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law." Whereupon the court then and there proceeded to swear the jury to try the issue joined as required by section 1483, Code of 1906. To this action of the court the accused then and there objected, and moved the court to enter a mistrial in the case, which was overruled by the court. The case then proceeded with the argument, and the jury returned a verdict of guilty.

It is contended by the appellant that the failure of the court to swear the jury before it received the testimony in the case was an error which resulted in the defendant being denied a trial by a legal jury, that is, a jury duly impaneled and sworn to try the issue joined; that the evidence in the case was heard by twelve men not under oath to consider the evidence and try the issue between the state and the defendant, and that therefore, a sworn jury as contemplated by the law did not hear any of the evidence in the case, or, in other words, that the case was tried, so far as the proof was concerned, before there was a sworn jury to hear it.

The state answers the proposition in several ways; First, that the jury was sworn to try the issue when it took the oath to answer questions as to its qualifications; second, that the jury laws are directory, and no complaint can be made as to the failure of administering the oath to try the issue, and also that it does not appear affirmatively that the error was harmful to the accused, and that the verdict of the jury cured the error, if any there was.

It will be observed that under section 1483, Code of 1906, "the jurors in a capital case shall be sworn to 'well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law.' " This was a capital case, and undoubtedly the statute is applicable.

Under section 2718, Code of 1906, it is provided that: "All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and the jury listed, drawn, summoned or impanneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn."

We are convinced that under the circumstances in this case the appellant was denied his right of a fair trial by a legal jury, impaneled and sworn to try the issue between the state and the prisoner. The preliminary oath administered to the jurors, before the *voir dire* examination, for the purpose of ascertaining their qualifications as jurors, was certainly not an oath to try the issue joined between the state and the accused, as specifically required by the statute in capital cases.

It seems clear to us that there is a marked distinction between the oath to answer questions as to qualifications and the oath to hear, consider, and try the issue of guilt joined between the state and the defendant. Therefore it is undoubtedly true that the twelve men in this case heard all of the evidence, while they were still an unsworn jury to try the issue joined. The jury heard no evidence whatever after it had been sworn to try the issue, involving life and liberty, between the state and the accused, and consequently the verdict it returned was based upon no evidence whatever that was heard by the jury while it was under oath to hear and consider the proof and try the issue of guilt between the state and the prisoner.

A verdict thus resting upon no proof that was heard after the jury became a legal, sworn jury, but based upon what the twelve men had heard before they were sworn to try the issue as required by the statute in such cases, was not a verdict founded upon proof received by a legal jury.

The case had already been tried, so far as the evidence was concerned, before the jury was sworn to consider the proof and try the issue joined. When the jury heard the testimony they were but little more than mere spectators, listening to the witnesses, since they were not under oath to try the issue joined; they did not receive the testimony while they were bound by the sanctity of the oath required in capital cases.

After the jury was sworn to answer questions as to qualifications, it was then necessary under the law that they also take a further oath that they would try the issue joined according to the evidence and the law, and until they took the latter oath they were not a legal jury to try the issue, as contemplated by the law. So, the proceeding, after the oath to try the issue was finally administered, was erroneous because the legal jury then had no evidence before it upon which to act.

The statute which declares that the jury laws are merely directory does not mean that an accused, especially in a capital case, may be denied his right to a legal jury in any essential and fundamental respect, when timely objection is made before the verdict is rendered. Would the directory statute sanction a verdict rendered by a jury composed of eleven men? This statute is not to be so liberally construed as to deprive the prisoner of his fundamental and substantial right to have the jury hear, consider, and try his case under the solemn oath to try the issue joined.

Furthermore, the directory statute plainly provides in the last line quoted that a jury "shall be deemed a legal jury after it shall have been impaneled and

sworn.'' The jury in this case were not sworn to try the issue joined, as section 1483, Code of 1906, specifically provides shall be done in capital cases.

Even if it be conceded that the jury was impaneled when it was sworn to answer questions as to qualifications on its *voir dire,* still it was then only impaneled, and not yet sworn to try the issue as required by the statute. Therefore the jury, not having been both impaneled and sworn as required by both the directory statute and the capital case statute (section 1483, Code of 1906), it was not a legal jury, and could not legally hear and consider the testimony, which it did hear and consider for several hours, before being sworn to try the issue in the case. Testimony introduced under these circumstances is not evidence upon which a jury can act, even though it is subsequently sworn to try the issue joined and render a true verdict on the testimony it heard before it was a legal jury.

In *Howard* v. *State,* 80 Tex. Cr. R. 588, 192 S. W. 770, L. R. A. 1917D, 391, a Texas case, the court said: "It has been the law in Texas, both by Constitution and statute, that an accused is entitled to a trial by a jury. It has not been held, so far as we have been able to discover, that a jury could possibly be a jury until it has been sworn to try the particular case. It is not a trial by jury, for, as Judge Simpkin said a jury cannot be said to be impaneled until it has been sworn.

If it be true that a jury is not a jury to try a case until sworn, as the authorities hold, then appellant was tried by a jury unsworn.''

We are constrained to disagree with the argument of the state with reference to the proposition that the error was harmless and did no substantial injury to the rights of the accused. We are unable to see how such a conclusion can be safely reached. To say that the jury gave the same careful and conscientious consideration to the evidence when they heard it while

not acting under the sanctity of an oath as they would have given had they been bound and obligated by a solemn oath would be to enter the field of speculation, and to so decide would be to say that this court could look into the minds of the jurors and determine with certainty that the effect of a solemn oath upon them would have made no change in the conscientious manner in which they received and considered the evidence offered in the case. It would seem to be more probable, in such a case, that the sanctity of an oath would have its bearing and influence upon the jurors in their consideration of the proof before them.

But aside from all this, the Constitution and the law of our state guarantees that the accused in a capital case shall have a legal jury to sit as triers of the fact in his case; and, in order that the prisoner be afforded such legal jury, it must be impaneled and sworn to try the issue joined between the state and the prisoner, and a true verdict render according to the law and the evidence, as specifically required by the statutes heretofore mentioned. This was not done, and for the error committed the judgment of the lower court is reversed and the case remanded.

*Reversed and remanded.*

SMITH, C. J., (dissenting.)

The judgment of the court below should be affirmed. The verdict was returned by the jury under the sanction of the required oath and the error committed by the court below in failing to administer this oath to the jury before the evidence was heard was harmless, for there is no probability, if indeed there is any possibility, the verdict was in any wise affected thereby.

I am requested by my Brother ETHRIDGE to say that he is of the same opinion.