956 A.2d 204

**Chester HARRIS**

v.

**STATE of Maryland.**

**No. 21, Sept. Term, 2007.**

Court of Appeals of Maryland.

Sept. 11, 2008.

116

George E. Burns, Jr., Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for petitioner/cross-respondent.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J.,\* RAKER, HARRELL, BATTAGLIA, ELDRIDGE, JOHN C. (Retired, Specially Assigned), WILNER, ALAN M. (Retired, Specially Assigned) and CATHELL, DALE R. (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

We issued a writ of certiorari in this criminal case to decide whether a trial court erred by denying a defendant's motion for a new trial where the guilty verdicts were rendered by a jury which had never been sworn.

## I.

On November 22, 2003, Michael Edwards was struck and killed by an automobile allegedly driven by Chester Harris. The State charged Harris with vehicular manslaughter under Maryland Code (2002), § 2–209 of the Criminal Law Article, and several related offenses. Harris's trial in the Circuit Court for Baltimore City commenced on October 28, 2004.

After the judge conducted voir dire during the morning of October 28, the attorneys accepted the panel of jurors and one alternate juror. The judge then indicated to the attorneys at a bench conference that he planned to release the jury for lunch early so that he could hear the defense counsel's motions. During this bench conference, the following exchange occurred:

"The Court: I will let this Jury go [to lunch].

---

\* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

"The Clerk: Do you want me to swear them in first?

"The Court: Yes, I'll have you swear them first. I'll pick the forelady or foreman first, too."

The judge chose the jury forelady and explained her duties. He then began to excuse the jurors before having them sworn. Defense Counsel repeated the clerk's previous inquiry as to swearing the jury:

"Defense Counsel: Your Honor, is the Jury going to be sworn?

"The Court: They're going to lunch. Why?

"Defense Counsel: I was just asking if they will be sworn.

"The Court: They are excused until 1:30."

The transcript does not reflect that the jury was sworn once they returned from lunch or that the jury was ever sworn thereafter. In a docket entry for October 28, 2004, the clerk entered "jury not sworn." There is no docket entry indicating, over the course of the two day trial, that the jury was ever sworn. At the end of the second day, the jury returned a verdict of guilty on the counts submitted to it. Harris was sentenced to a total of fifteen years imprisonment.

Thereafter, Harris filed a motion for a new trial arguing, *inter alia*, that the Court did not swear the jury as required by Maryland Rule 4–312(h). The rule states as follows (emphasis added):

"(h) **Impanelling the jury.** The jurors and any alternates to be impanelled shall be called from the qualified jurors remaining on the list in the order previously designated by the court and *shall be sworn*. The court shall designate a juror as foreman."

At the hearing on the motion for a new trial, the trial judge disputed Harris's contention that jury was not sworn. The judge stated:

"The jury was sworn. What he's talking about—I was trying to figure out what he was talking about there. The jury was sworn, but what happened is they came over on a day we actually didn't start the trial until the next day.

And I hadn't even voir dired the jury yet and we started over. He wanted me to swear—I didn't know what he meant by it. But before the trial began, jury was sworn. So, I think that's what he was referring to. My memory is backed up by the file.

\* \* \*

"I'm not sure of the date, but like the 28th versus the 29th, when the case began, you requested that I swear them ahead of time and this was before the voir dire took place. I couldn't reach them that day. We started the next day. That's when the voir dire took place. That is when the jury was sworn."

In response to the Judge's statements, defense counsel explained as follows:

"As far as the chronology of the case, I would suggest to the Court that we selected a jury in the morning of the first day of trial. We concluded the selection at lunchtime. A lunch break was taken. Opening argument and testimony began in the afternoon upon our return from the lunch break. It was a two day trial where, at the close of that day, the trial continued to the next morning and that is when it concluded. The jury was not sworn. I viewed the transcript—I viewed the tape of this trial and prior to the luncheon break, I asked the Court to have the jury sworn and, according to the transcript, the Court's response was the jury was going to lunch. And when we returned from the lunch break, the trial began, opening arguments began, and I don't believe the jury was sworn."

The judge denied Harris's motion for a new trial, saying:

"I have considered the arguments of counsel and reread my notes with respect to the file. I do not have a transcript in which to refer to each item individually, only from my memory. I find that the evidence has been properly presented, that the jury was sworn and that the motion for a new trial is denied."

Harris appealed to the Court of Special Appeals, arguing, *inter alia*, that the trial court erred in not swearing the jury.

In a reported opinion, *Harris v. State*, 173 Md.App. 71, 917 A.2d 1162 (2007), the intermediate appellate court held that the trial court properly denied Harris's motion for a new trial. The court noted that there "is a strong presumption that judges and court clerks ... properly perform their duties." *Harris v. State, supra*, 173 Md.App. at 82, 917 A.2d at 1168–1169, quoting *Schowgurow v. State*, 240 Md. 121, 126, 213 A.2d 475 (1965). According to the intermediate appellate court, "it was then incumbent upon Harris to persuade the trial court that, in fact, the jurors had not been given an oath" and that Harris failed to persuade the trial court. *Harris v. State*, 173 Md.App. at 84, 917 A.2d at 1169. The Court of Special Appeals relied on the trial judge's recollection, stating that "we are satisfied that the court's references to its recollection of the swearing of the jury, and Harris's failure to offer evidence to the contrary, result in Harris having failed to carry his burden of persuasion." *Harris*, 173 Md.App. at 85, 917 A.2d at 1170. Citing *United States v. Pinero*, 948 F.2d 698 (11th Cir.1991), the Court of Special Appeals stated that "the absence of an affirmative statement in the transcript that the jury was sworn furnishes no factual support for appellant's contention that it was not." *Harris*, 173 Md.App. at 83, 917 A.2d at 1169. The Court of Special Appeals did not mention the docket entry stating that the jury was not sworn.

The Court of Special Appeals did reject an argument by the State that Harris waived his objection to an unsworn jury by not raising the issue in a timely manner. In so holding, the intermediate appellate court explained that "we are satisfied that counsel's two inquiries to the court regarding swearing of the jury were sufficient to negate the State's waiver argument." *Harris, supra*, 173 Md.App. at 79, 917 A.2d at 1166.

Harris filed in this Court a petition for a writ of certiorari, presenting the following two questions:

"1. Did the trial judge court err in not swearing the jury?

"2. Did the trial court unfairly restrict the defense closing argument by preventing counsel from arguing problems with eyewitness identification?

The State, in its answer, argued that Harris had failed to overcome the presumption of regularity and that, alternatively, the failure to swear the jury was harmless error. The State also filed a conditional cross-petition for a writ of certiorari, presenting the following question:

"Is Harris's claim that the jury was not sworn waived where he did not bring it to the attention of the trial court until nine days after the jury returned its verdict and Harris was sentenced?"

We granted both the petition and the cross-petition. *Harris v. State,* 399 Md. 592, 925 A.2d 632 (2007). We shall hold that Harris did establish that the jury was not sworn, that there was no waiver of Harris's objection to the unsworn jury, and that, under the circumstances of this case, the harmless error doctrine is not applicable. We shall, therefore, reverse on the ground that the jury was never sworn. Accordingly, we shall not reach the second question presented in Harris's certiorari petition.

## II.

There is a presumption of regularity which normally attaches to trial court proceedings, although its applicability may sometimes depend upon the nature of the issue before the reviewing court. *See, e.g., United States v. Morgan,* 346 U.S. 502, 512, 74 S.Ct. 247, 253, 98 L.Ed. 248, 257 (1954) ("It is presumed the [trial court] proceedings were correct and the burden rests on the [challenger] to show otherwise"); *Skok v. State,* 361 Md. 52, 78, 760 A.2d 647, 661 (2000) ("[A] presumption of regularity attaches to the criminal case"); *Beales v. State,* 329 Md. 263, 273, 619 A.2d 105, 110 (1993); *Schowgurow v. State, supra,* 240 Md. at 126, 213 A.2d at 479. Nonetheless, the presumption of regularity is rebuttable. *Beales v. State, supra,* 329 Md. at 274, 619 A.2d at 110–111. ("[W]hen viewed as a whole," the "record thus demonstrates" that the presumption of regularity was rebutted).

In the present case, both the trial transcript and the docket entries rebut any presumption of regularity. The trial tran-

script clearly shows that the jury was not sworn before the jurors were dismissed for lunch. When the jury reconvened after lunch, the transcript reveals that the Circuit Court proceeded directly with opening statements, without the oath being administered to the jury. According to the trial transcript, which the official reporter of the Circuit Court certified as being "complete and accurate," the jury was not sworn at any point during the trial. The docket entry stating that the jury was not sworn reinforces the accuracy of the transcript.

The State and the Court of Special Appeals both relied on *United States v. Pinero, supra*, 948 F.2d 698, to support the assertion that Harris failed to meet his burden of overcoming the presumption of regularity. The *Pinero* opinion did not mention a presumption of regularity. In *Pinero*, the argument that the jury was not sworn was made for the first time on appeal, and the appellate court pointed out that there were no statements by trial counsel, the court reporter, or anyone else present at the trial, that the jury had not been sworn. In this context, the federal appellate court simply stated that "[t]he mere absence of an affirmative statement in the record . . . is not enough to establish that the jury was not in fact sworn." *Pinero*, 948 F.2d at 700.

The record in the present matter offers substantially more than the record in *Pinero* to establish that the jury was not sworn. The docket entries contain the affirmative statement that the jury was not sworn. The trial transcript also shows two inquiries from defense counsel regarding the unsworn jury, in addition to an inquiry from the courtroom clerk. It is also noteworthy that the transcript of the hearing on the motion for a new trial discloses that the prosecuting attorney made no argument to rebut defense counsel's contention that the jury had never been sworn. The prosecuting attorney, however, did make rebuttal arguments regarding all of defense counsel's other arguments at the hearing.

The only thing contradicting the transcripts and the docket entries was the statement by the trial judge, "only from my memory," that "the jury was sworn." Under the State's argument, neither the transcripts nor the docket entries can

overcome such a statement by the trial judge from his "memory." The State cites no authority supporting this position, and we are aware of none.

In sum, we hold that any presumption of regularity was overcome in the present case. The jury in this case was never sworn.[1]

### III.

 As earlier pointed out, Maryland Rule 4–312(h) mandates that the jury "shall be sworn." The Rule represents the codification of a long-standing common law requirement.

 Article 5 of the Maryland Declaration of Rights, in addition to providing generally that Marylanders are entitled to the common law, distinctly provides that Maryland inhabitants are entitled to trial by jury in accordance with the common law. The only exception to the right of a common law jury, under a 1992 constitutional amendment, is that juries of six or more persons are permitted in civil cases. *See, e.g., Bryan v. State Roads Commission*, 356 Md. 4, 9, 736 A.2d 1057 (1999) ("The jury trial clause of Article 5 of the Declaration of Rights, from its inception as part of the Constitution of

---

1. Since the Court of Special Appeals and the arguments in this Court have focused on whether the presumption of regularity was overcome, we have dealt with the issue on this basis. We point out, however, that there is authority holding that the record must affirmatively show that the jury was sworn. *See, e.g., Slaughter v. State*, 100 Ga. 323, 329, 28 S.E. 159, 161 (1897) (" '[T]he fact of swearing [the jurors] must appear on the record' "); *State v. Frazier*, 339 Mo. 966, 980, 98 S.W.2d 707, 715 (1936) ("[I]t is imperative that the jury be sworn to try the cause and that the record show it"); *State v. Mitchell*, 199 Mo. 105, 108, 97 S.W. 561, 562 (1906) ("[I]t is everywhere held that the record proper in a criminal appeal must show that the jury was sworn to try the cause"); *State v. Moore*, 57 W.Va. 146, 148, 49 S.E. 1015, 1016 (1905) ("[A] person cannot be legally convicted unless the record shows that the jury which tried the case were sworn according to law"). Moreover, most of the cases in other states, dealing with the issue of whether jurors were sworn, have not considered the issue in terms of a presumption of regularity. Nevertheless, we need not, and therefore do not, express an opinion with respect to this matter. We have simply assumed, *arguendo*, that a presumption of regularity is applicable to the issue of whether the jury was sworn.

1776 until the 1992 constitutional amendment, meant 'that it is the historical trial by jury, as it existed when the Constitution of the State was first adopted, to which the inhabitants of [the] State are entitled,' " quoting *Knee v. City Pass. Ry. Co.*, 87 Md. 623, 624, 40 A. 890, 891 (1898)); *State v. Kenney*, 327 Md. 354, 357–361, 609 A.2d 337 (1992); *State v. McKay*, 280 Md. 558, 566–572, 375 A.2d 228 (1977).[2] In *Owens v. State*, 399 Md. 388, 408–409, 924 A.2d 1072 (2007), Judge Harrell for the Court reviewed the history of the common law jury, and he pointed out that, when the jury "began to assume a form more recognizable to us under the reign of King Henry II," it was a "sworn jury." *See also* William Lambard, *Eirenarcha or The Office of Justices of Peace*, at 308 (1581, 1582), reprinted in Professional Books Limited (London 1972) ("But these men be not truly Jurors, till they be sworn, as their name pretendeth, and otherwise their presentment is utterly void").

In addition, Article 21 of the Maryland Declaration of Rights requires, *interalia*, that in a criminal prosecution, the

---

**2.** Article 5 of the Declaration of Rights states as follows:

"**Article 5. Common law and statutes of England applicable; trial by jury; property derived under charter granted to Lord Baltimore.**

(a)(1) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State. And the Inhabitants of Maryland are also entitled to all property derived to them from, or under the Charter granted by His Majesty Charles the First to Caecilius Calvert, Baron of Baltimore.

(2) Legislation may be enacted that limits the right to trial by jury in civil proceedings to those proceedings in which the amount in controversy exceeds $10,000.

(b) The parties to any civil proceeding in which the right to a jury trial is preserved are entitled to a trial by jury of at least 6 jurors.

(c) That notwithstanding the Common Law of England, nothing in this Constitution prohibits trial by jury of less than 12 jurors in any civil proceeding in which the right to a jury trial is preserved."

accused is entitled to "trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." Courts have held that a sworn jury is an element of an "impartial" jury and is necessary for a "legally constituted" jury. In *People v. Pribble,* 72 Mich.App. 219, 224, 249 N.W.2d 363, 366 (1976), a Michigan court explained as follows:

"The required oath is not a mere 'formality' which is required only by tradition. The oath represents a solemn promise on the part of each juror to do his duty according to the dictates of the law to see that justice is done. This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered to insure that the jurors pay attention to the evidence, observe the credibility and demeanor of the witnesses and conduct themselves at all times as befits one holding such an important position. The oath is designed to protect the fundamental right of trial by an impartial jury."

*See also People v. Pelton,* 116 Cal.App. Supp. 789, 792, 7 P.2d 205 (1931) (Where the jury was never sworn, the defendant was denied his right to "a legally constituted jury"); *Spencer v. State,* 281 Ga. 533, 534, 640 S.E.2d 267, 268 (2007), *certiorari denied,* — U.S. —, 127 S.Ct. 2914, 168 L.Ed.2d 243 (2007) (An unsworn jury is not a "legally constituted" jury); *Sides v. State,* 693 N.E.2d 1310, 1312 (Ind.1998) ("[T]he oath serves the dual function of impressing upon the jury the solemness of the trial and ensuring a defendant's right to an impartial jury"); *Miller v. State,* 122 Miss. 19, 37, 84 So. 161, 161 (1920) (Since the jury was not sworn before or during the evidentiary portion of the trial, the court held that "the appellant was denied his right of a fair trial by a legal jury"); *State v. Mitchell,* 199 Mo. 105, 108, 97 S.W. 561, 562 (1906) ("[T]he tribunal [cannot] be considered as lawfully constituted unless the jurors ... take [the] oath"); *State v. Barone,* 329 Or. 210, 226, 986 P.2d 5, 17 (1999), *certiorari denied,* 528 U.S. 1086, 120 S.Ct. 813, 145 L.Ed.2d 685 (2000) ("The jury oath is designed to vindicate a defendant's fundamental constitutional rights to a fair trial before an impartial jury"); *State v. Moore,*

57 W.Va. 146, 148, 49 S.E. 1015, 1016 (1905) ("[A] person cannot be legally convicted unless . . . the jury which tried the case were sworn").

Consequently, the failure to administer the oath to the jurors in the case at bar was clearly error. We now turn to the State's waiver and harmless error arguments.

## IV.

■ This Court has not previously considered the issues of waiver and harmless error when there is either a complete failure to swear the jury or when the oath is belatedly administered to the jurors after the introduction of evidence has begun. Nevertheless, these issues have been extensively treated by appellate courts in our sister states.

In those states where the matter has been considered, the courts have, almost unanimously, held that the concepts of waiver and harmless error have no application when the jury was *never* sworn. On the other hand, several of the cases hold that, where the jury was belatedly sworn or there was some other defect in administering the oath, the failure to raise the issue in a timely manner constitutes a waiver. In addition, defects in connection with the administration of the oath have been deemed harmless error by some courts. *See, e.g., Ex Parte Benford,* 935 So.2d 421, 429–430 (Ala.2006) ("[A]ny defect in the administration of the oath is reversible error only if some objection was taken . . . during the progress of the trial" but "a verdict rendered by jurors who have *never* been sworn is a nullity") (internal quotation marks omitted, emphasis in the original); *State v. Godfrey,* 136 Ariz. 471, 472–473, 666 P.2d 1080, 1081–1082 (1983) (The court distinguished the situation where "the jurors were never sworn" from the situation where they were belatedly sworn prior to their deliberations); *People v. Pelton, supra,* 116 Cal.App. Supp. at 791, 7 P.2d at 205 ("[W]hile mere irregularities in the swearing . . . may be waived by failing to object until after a verdict, an entire failure to swear the jury cannot be waived in any manner or under any circumstances"); *People v. Clouse,* 859

P.2d 228, 233 (Colo.App.1992) (The jury was sworn during the prosecution's case, and the court held that the error was harmless); *Spencer v. State, supra,* 281 Ga. at 534, 640 S.E.2d at 268 ("[T]he failure to administer [the] oath to the trial jury requires the setting aside of any conviction"); *Grant v. State,* 272 Ga. 213, 528 S.E.2d 512 (2000); *State v. Frazier,* 339 Mo. 966, 980, 98 S.W.2d 707, 715 (1936) ("[A] party may waive irregularities in the swearing of the jury, where there has been substantial compliance with the statute [that the jury be sworn at the beginning of the trial]"); *State v. Mitchell, supra,* 199 Mo. at 108, 97 S.W. at 562 (Since the jury was not sworn, the conviction was reversed); *State v. Arellano,* 125 N.M. 709, 711–712, 965 P.2d 293, 295 (1998) (As the jury was belatedly sworn, defense counsel's failure at the earlier stage of trial to call the court's attention to the omission constituted a waiver); *Brown v. State,* 220 S.W.3d 552, 554 (Tex.App.2007) ("[A] complete failure to administer the jury oath renders the jury's verdict a nullity and is reversible error," but "the untimely swearing of the jury does not render the verdict void"); *State v. Moore, supra,* 57 W.Va. at 148, 49 S.E. at 1016 (The jury must be "sworn in the manner prescribed by law before there can be a legal conviction").[3]

In situations where the jury was sworn, but where the administration of the oath to jurors did not occur before all or a substantial part of the evidence had been introduced, the cases appear to be in conflict with regard to the applicability of waiver and/or harmless error principles. *Compare, e.g., People v. Pribble, supra,* 72 Mich.App. 219, 249 N.W.2d 363, and *Miller v. State, supra,* 122 Miss. 19, 84 So. 161, with *State*

---

**3.** The only state appellate case, which has been called to our attention, holding that a complete failure to swear the jury can be waived by counsel is *State v. Vogh,* 179 Or.App. 585, 41 P.3d 421 (2002). If the *Vogh* case represents Oregon law, then Oregon law in this respect appears to be unique among the several states. *See,* however, *State v. Barone,* 329 Or. 210, 226, 986 P.2d 5, 17–18 (1999), *cert. denied,* 528 U.S. 1086, 120 S.Ct. 813, 145 L.Ed.2d 685 (2000), where the Supreme Court of Oregon held that a *belated* swearing of the jury did not constitute "structural error" but reserved the question of whether the complete failure to swear the jury automatically required a reversal.

*v. Godfrey, supra,* 136 Ariz. 471, 666 P.2d 1080; *People v. Clouse, supra,* 859 P.2d at 233; *State v. Frazier, supra,* 339 Mo. at 979–982, 98 S.W.2d at 715–716; and *State v. Arellano, supra,* 125 N.M. at 711–713, 965 P.2d at 295–297. Since, in the case at bar, the jury was never sworn, we leave for another day the resolution of any issues arising when there is a belated administration of the oath to jurors.[4]

■ We do agree with the great majority of cases that principles of waiver and harmless error are inapplicable when a jury in a criminal case has never been sworn. As previously discussed, the administration of the oath is an essential ingredient of a legally constituted jury and an impartial jury.

■ The State argues that, because many other rights associated with a trial by jury or other defects in the composition of the jury can be waived, the right to have a sworn jury should also be subject to waiver (State's brief at 14–15). Several of the examples pointed to by the State (*e.g.,* lack of opportunity to object to a particular juror for cause or a noncitizen being on the jury) do not involve fundamental constitutional rights. A sworn jury, however, is a necessary element for a legally constituted jury and an impartial jury, rights protected by Articles 5 and 21 of the Maryland Declaration of Rights. Moreover, the right to a legally constituted jury is different from many other constitutional rights associated with a jury trial, including the basic right to have a jury trial in criminal cases. When a defendant has waived his right to a jury trial, the defendant has nevertheless been tried by a legally authorized trier of fact, namely the trial judge. When a defendant has been tried and convicted by a jury which was not sworn, and therefore not legally constituted, the defendant has not been adjudged guilty by any authorized trier of fact. As numerous cases hold, such a verdict is a nullity.

Furthermore, even if we were to hold that a "jury trial" before a jury which was never sworn could be waived (and we

---

4. In this connection, *see Alston v. State,* 177 Md.App. 1, 934 A.2d 949 (2007), *certiorari granted,* 403 Md. 304, 941 A.2d 1104 (2008).

do not so hold), we agree with the Court of Special Appeals that there would be no waiver in the present case. Defense counsel twice called the trial judge's attention to the failure to swear the jury. This was after voir dire, immediately after the forelady was selected, and before opening arguments and the introduction of evidence. In the case relied on by the State, *State v. Vogh*, 179 Or.App. 585, 593–594, 41 P.3d 421, 426 (2002), the only case from a state appellate court to hold that a complete failure to swear the jury can be waived,[5] the issue of an allegedly unsworn jury was not raised until sentencing, which was eight days after the jury returned its verdict.[6]

 Turning to the matter of harmless error, the appellate courts in other states, almost unanimously, hold that the complete failure to swear the jury can never be harmless error. In this regard, a jury which has never been sworn falls into the same "structural error" category as a defective reasonable doubt instruction, the denial of a right to a jury trial, the total deprivation of counsel, discrimination in the selection of juries, etc. For a review of many errors of this type, *see* Judge Raker's opinion for the Court in *Redman v. State*, 363 Md. 298, 304, 768 A.2d 656, 659 (2001). Although this Court has not previously considered the issue of a jury which has never been sworn, we have recognized that the harmless error doctrine does not apply when the trial is presided over by "a judge who is not impartial." *Redman v. State, supra*, 363 Md. at 304 n. 5, 768 A.2d at 659 n. 5, citing *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). We perceive no basis to distinguish between a judge who is not impartial and a jury which is not impartial. And, as the cases in other states

---

5. *See* n. 3, *supra.*

6. If we were to hold that a verdict by an unsworn jury could be waived, we would then be faced with the question of what constitutes a waiver. In *State v. McKay*, 280 Md. 558, 567, 572–573, 375 A.2d 228, 232–233, 236 (1977), this Court held that waiver of the right to a unanimous jury verdict, under Articles 5 and 21 of the Maryland Declaration of Rights, required a *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), knowing and intelligent waiver by the defendant himself.

all hold, an unsworn jury deprives the defendant of the constitutional right to an impartial jury. This Court has also held that a conviction by a jury which is required to take an oath containing an unconstitutional religious element, with those unwilling to take the oath being excluded, must be reversed regardless of whether prejudice is shown in a particular case. *Schowgurow v. State, supra,* 240 Md. at 131, 213 A.2d at 482.

 There is another reason why the harmless error principle is inapplicable when a jury in a criminal case is never sworn. For purposes of the protection against double jeopardy, in a jury trial jeopardy attaches "when the jury is empaneled *and sworn.*" *Hubbard v. State,* 395 Md. 73, 90, 909 A.2d 270, 279 (2006) (emphasis added). *See, e.g., Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *State v. Woodson,* 338 Md. 322, 329, 658 A.2d 272, 276 (1995); *Blondes v. State,* 273 Md. 435, 444, 330 A.2d 169, 173 (1975). Unless courts were to create an exception to this principle for unsworn juries (and no case has been called to our attention creating such an exception), jeopardy will not attach if the jury is never sworn. In this situation, a defendant runs the risk that the State may attempt to prosecute a second time for the same offense. *See Spencer v. State, supra,* 281 Ga. at 534–535, 640 S.E.2d at 268 (The defendant was "acquitted" by an unsworn jury, and the state thereafter prosecuted him a second time for the same offense. The Supreme Court of Georgia held that the second prosecution was permissible because "jeopardy does not attach in a jury trial until the jury is both impaneled and *sworn. * * * Thus, Spencer was not placed in jeopardy at all, regardless of the attempted trial and the pronouncements of the fatally infirm jury");[7] *Slaughter v. State, supra,* 100 Ga. at 330, 28 S.E. at 161 ("[A] conviction by an unsworn jury is a mere nullity, of which the accused could not, upon a subsequent arraignment,

---

7. We cite the *Spencer* case to illustrate the defendant's risk when a jury is never sworn. Whether we would agree with the result in *Spencer,* however, is another matter. We need not reach that issue here.

avail himself by a plea of autre fois convict"). *See also People v. Pribble, supra,* 72 Mich.App. at 225–226, 249 N.W.2d at 366 ("Jeopardy could not attach in the instant case where the jury was not given the oath which would authorize them to serve as a jury").

Since the jury which convicted the petitioner Harris was never sworn, the convictions must be reversed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

HARRELL and RAKER, JJ., Dissent.

HARRELL, J.

I neither would affirm nor reverse the judgment in this case, at this point, but rather would remand the matter for another trial judge to determine as a fact whether the jury was sworn. On an equivocal record, the Majority opinion appears to find as a fact that the jury was not sworn. Majority op. at 123–124, 956 A.2d at 208-09. While that may be a permissible inference for a fact-finder to draw, in isolation, from the courtroom clerk's docket entry of 28 October 2004,[1]

---

1. Both the hand-written and typed versions of the relevant docket entry are not as clear as they could be as to what part of the proceedings for that day, 28 October 2004, they purport to describe. Both state, in relevant part, "10–28–04 Jury not sworn, voir dire not admin." Yet, the transcript of proceedings for the morning of 28 October 2004 reveals that voir dire and jury selection did occur before the lunch break. Presumably, one inference therefore which may be drawn by a fact-finder from the portion of the docket entry as to the jury not being sworn describes only what did not happen prior to the lunch break. It would be useful in determining what to make of the scope of this docket entry, relative to the two day trial, to be apprised of any customs

the transcript of the morning proceedings of the same date (where the courtroom clerk and defense counsel, in rapid order, invited the trial judge to let the jury be sworn before releasing them for lunch), and the absence of any express indication that the jury was sworn subsequently, there is the matter of the transcript of the proceedings on the motion for new trial which contains a basis to infer otherwise. Granting that the trial judge, in the course of the motion hearing and his ruling, did not place his trial notes in the record literally, he nonetheless unequivocally stated, attributing as his source his memory *and his notes,* that "before the trial began, Jury was sworn."

I do not think that, as appellate judges, ordinarily we engage in fact-finding or the drawing of factual inferences as to dispositive facts favoring the contentions of one party or another (except insofar as, for analytical reasons, we might appear to do so in the review of the grant of summary judgment in civil cases and the like). I would decline to make the present case an exception. The resolution of the ultimate fact of whether the jury in this trial was sworn is fit, in the first instance, for a fact-finder. The trial judge that presided over Harris' trial is a retired judge who may be called as a fact witness and, unless destroyed, his redacted trial notes examined. If other courtroom personnel and jurors present at the two day trial (28–29 October 2004) are compellable and available, they also may be examined for their recollection and the basis therefor, as possibly may Harris' then trial counsel, if desired.

If another trial judge, after hearing the relevant facts, finds that the jury was not sworn, in that event, I would agree with the legal analysis of the Majority opinion here. If the finding, however, were that the jury was sworn, and a more developed record supported that finding, the Majority opinion, as such, becomes surplusage and Harris' second issue would need to be reached.

---

or practices in the Circuit Court for Baltimore City at the time bearing on the regularity of making such notations and the significance that no subsequent note on the topic was made.

**134**

In short, I am unwilling, on appeal and on the record before us at present, to weigh the docket entry and transcript of the morning proceedings of 28 October 2004 against the trial judge's memory and notes and find the latter incredible.

Judge RAKER has authorized me to state that she joins in this dissenting opinion.